## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CRYOCOR, INC. and AMS RESEARCH CORPORATION,

        Plaintiffs,

        v.

CRYOCATH TECHNOLOGIES, INC.

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
   Civil Action No. 08-031-GMS

CRYOCATH TECHNOLOGIES, INC.,

        Counterclaimant,

        v.

CRYOCOR, INC. and AMS RESEARCH CORPORATION,

        Counterdefendants.

)
)
)
)
)
)
)
)
)
)
)
   **JURY TRIAL DEMANDED**

## ANSWER AND COUNTERCLAIMS

Defendant CryoCath Technologies, Inc. ("CryoCath") hereby answers plaintiffs CryoCor, Inc.'s and AMS Research Corporation's (collectively "plaintiffs") complaint, and counterclaims as follows:

### Nature of Action

1.     Admit.

**Parties**

2.      CryoCath admits that CryoCor is a Delaware corporation having its principal

place of business at 9717 Pacific Heights Boulevard, San Diego, California 92121, but denies the

remaining allegations.

3.      CryoCath lacks information sufficient to form a belief as to these allegations and

therefore denies them.

4.      Admit.

5.      Admit.

**Jurisdiction and Venue**

6.      Admit.

7.      CryoCath admits it is subject to this Court's personal jurisdiction in this action

and denies the remaining allegations.

8.      Admit.

**The Patents-in-Suit**

9.      Deny.

10.      Deny.

11.      CryoCath lacks information sufficient to form a belief as to these allegations and

therefore denies them.

**Count I (Infringement of U.S. Patent No. 6,572,610 (the '610 patent))**

12.      CryoCath incorporates paragraphs 1-11.

13.      Deny.

14.      Deny.

15.      Deny.

**Count II (Infringement of U.S. Patent No. 6,471,694 (the '694 patent))**

16.    CryoCath incorporates paragraphs 1-15.

17.    Deny.

18.    Deny.

19.    Deny.

## AFFIRMATIVE DEFENSES

20.    The claims of the '610 patent are invalid because they fail to meet one or more of the requirements of 35 U.S.C. §§ 102, 103 and 112.

21.    CryoCath has not infringed and does not infringe any claim of the '610 patent.

22.    The claims of the '694 patent are invalid because they fail to meet one or more of the requirements of 35 U.S.C. §§ 102, 103 and 112.

23.    CryoCath has not infringed and does not infringe any claim of the '694 patent.

24.    One or both plaintiffs lack standing to assert infringement of the '610 patent.

25.    One or both plaintiffs lack standing to assert infringement of the '694 patent.

26.    Plaintiffs, by their conduct and the conduct of their officers, are legally or equitably estopped to assert that CryoCath infringes any claim of the '610 patent.

27.    Plaintiffs, by their conduct and the conduct of their officers, are legally and equitably estopped to assert that CryoCath infringes any claim of the '694 patent.

28.    Plaintiffs are barred from recovery by the doctrine of patent misuse for reasons stated in the Counterclaim.

## PRAYER FOR RELIEF

CryoCath respectfully requests this Court enter judgment in favor of CryoCath and against the plaintiffs including an Order granting CryoCath the following relief:

A.    Dismissal with prejudice of the Complaint;

B.    A declaration that the asserted claims of the patents-in-suit are not valid;

C.    A declaration that the asserted claims of the patents-in-suit are not infringed;

D.    A declaration that this case is exceptional under 35 U.S.C. § 285 at least because plaintiffs' allegations in their Complaint that CryoCath willfully infringed either the '610 or the '694 patent have no basis in law or fact;

E.    An award of CryoCath's costs of suit, including reasonable attorneys' fees, under 35 U.S.C. § 285;

F.    A declaration that plaintiffs' officers are vicariously liable for CryoCath's costs in paragraph E; and

G.    Such further relief as this Court deems appropriate.

**COUNTERCLAIMS**

Defendant-counterclaimant CryoCath alleges for its Counterclaims as follows:

**Nature of Action**

1.    This is an action seeking:

a.    declaratory judgment of patent invalidity and noninfringement under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.* and 28 U.S.C. §§ 2201 and 2202;

b.    reparation for antitrust violations under the Sherman Act, 15 U.S.C. §§ 1-2;

c.    reparation for deceptive and unfair business practices under Delaware Code; and

d.    reparation for patent infringement under 35 U.S.C. §§ 101 *et seq.*

## Parties, Jurisdiction, and Venue

2.      Counterclaimant CryoCath Technologies, Inc. is a corporation of the province of Quebec, Canada having its principal place of business at 16771 Chemin Ste-Marie, Kirkland, Quebec, H9H 5H3, Canada.

3.      On information and belief, counterdefendant CryoCor, Inc. is a Delaware corporation having its principal place of business at 9717 Pacific Heights Boulevard, San Diego, California, 92121.

4.      Counterdefendant CryoCor, Inc. makes and sells in the United States cryosurgical devices, including CryoBlator catheters and Cryo Consoles.  The devices are manufactured in the United States and sold in the United States and internationally, including in the European Union. These sales of U.S.-manufactured devices include sales through distributors in Italy and the United Kingdom.

5.      On information and belief, counterdefendant AMS Research Corporation is a Delaware Corporation with its principal place of business at 10700 Bren Road West, Minnetonka, Minnesota 55343.

6.      Based upon information in the Complaint in this action, counterdefendant AMS Research is the owner of the entire right, title and interest in and to the '610 patent.

7.      Based upon information in the Complaint in this action, counterdefendant AMS Research is the owner of the entire right, title and interest in and to the '694 patent.

8.      On information and belief, counterdefendant AMS Research Corporation does not manufacture any device within the scope of any claim of the '610 patent.

9.      On information and belief, counterdefendant AMS Research Corporation does not manufacture any device within the scope of any claim of the '694 patent.

10.    This Court has personal jurisdiction over counterdefendant CryoCor.

11.    This Court has personal jurisdiction over counterdefendant AMS Research.

12.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1338.

13.    Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400.

<strong>CryoCath's Friedman Patent</strong>

14.    On September 15, 1992, the United States Patent Office issued United States Patent No.5,147,355 (the '355 patent), entitled "Cryoablation Catheter and Method of Performing Cryoablation" to Peter L. Friedman, Paul Wang, and Ernest G. Cravalho.  Ex. A.

15.    CryoCath owns the '355 patent.

16.    CryoCath's '355 patent is valid.

17.    CryoCath's '355 patent is enforceable.

18.    CryoCath makes, sells, and offers for sale devices covered by one or more claims of the '355 patent.

<strong>Count I:  Infringement of CryoCath's '355 Patent</strong>

19.    CryoCath incorporates paragraphs 1-18.

20.    Defendant CryoCor directly infringed and infringes one or more claims of CryoCath's '355 patent identified by making, using, offering to sell, or selling the accused devices in the United States.  CryoCor is liable to CryoCath for infringement under 35 U.S.C. § 271(a).

21.    CryoCor knows of the existence of CryoCath's '355 patent.

22.    Defendant CryoCor knows others infringe CryoCath's '355 patent by using a device covered by at least one claim of the patent.  CryoCor intentionally aids and abets that infringement by at least making and selling one or more accused devices to those others for their infringing uses. CryoCor is liable to CryoCath for infringement under 35 U.S.C. § 271(b).

6

23.     Defendant CryoCor indirectly infringes by contributing to others' infringement of CryoCath's '355 patent by at least offering to sell or selling within the United States one or more components of a device or machine covered by the claims of CryoCath's patent identified in this Count, which device or machine constitutes a material part of the invention of the patent, knowing the device or machine to be especially made or adapted for use in an infringement of the patent and not a staple article or commodity of commerce suitable for non-infringing use. CryoCor is liable to CryoCath for infringement under 35 U.S.C. § 271(c).

24.     CryoCor's infringement of CryoCath's '355 patent caused and will continue to cause irreparable injury to CryoCath for which there is no adequate remedy at law unless the acts complained of are enjoined by the Court.

25.     On information and belief, CryoCor lacks funds to make CryoCath whole for this infringement and will lack those funds even if it is permitted to sell its infringing products during the pendency of this litigation.  Thus, among CryoCath's irreparable harm would be CryoCor's continued sales without the ability to compensate CryoCath for CryoCor's infringement. Consequently, both preliminary and permanent injunctive relief are necessary and appropriate.

26.     CryoCor's acts complained of here directly and proximately damaged and continue to damage CryoCath, making lost profits damages appropriate under 35 U.S.C. § 284.

27.     CryoCor's acts complained of here directly and proximately damaged and continue to damage CryoCath, making reasonable royalties damages appropriate under 35 U.S.C. § 284.

### Count II:  Willful Infringement

28.     CryoCath incorporates paragraphs 1-27.

29.     On information and belief, counterdefendant CryoCor admitted infringing certain of CryoCath's patents relating to primary and pre-cooling systems at least as early as December 2006, for example in its 2006 Form 10-K and its August 2007 Form 10-Q.

30.     Publicly available information reveals, and discovery will further reveal, that counterdefendant CryoCor intentionally infringed CryoCath's '355 patent earlier than December 2006.

31.     Counterdefendant CryoCor intended to infringe CryoCath's patents at least as stated in its December 2006 Form 10-K and August 2007 Form 10-Q.

32.     Counterdefendant CryoCor's intentional infringement makes it liable under 35 U.S.C. §§ 284-285 to CryoCor for willful infringement of one or more claims of CryoCath's '355 patent.

33.     Counterdefendant CryoCor intended for both direct and indirect infringement to result from its acts, making it liable for willful direct and indirect infringement.

**Count III: Patent Misuse and Violation of Sherman Act Section 2**

34.     CryoCath incorporates paragraphs 1-33.

35.     Counterdefendant CryoCor competes with CryoCath in the relevant markets that exist in the United States for cryosurgical products to treat heart disorders.

36.     On information and belief, counterdefendant CryoCor has a monopoly on certain uses within the United States of cryosurgical products to treat heart disorders.

37.     By this lawsuit, counterdefendants seek to exclude CryoCath from that market.

38.     Counterdefendants allege in this lawsuit that CryoCath infringes the '694 patent.

39.     Each independent claim of the '694 patent requires a flow control based upon three independent parameters.

40.    CryoCath's accused console does not use three independent parameters to control flow.

41.    Counterdefendant CryoCor knows CryoCath's console does not use three independent parameters to control flow including, for example, from publicly-available information.

42.    That knowledge is imputed to counterdefendant AMS Research or AMS Research also independently knows that CryoCath's console does not use three independent parameters to control flow.

43.    The claims of the '694 patent (if valid and enforceable) cannot read on CryoCath's accused console.

44.    At least one counterdefendant lacks standing to assert the '694 patent against CryoCath, further demonstrating counterdefendants' assertion of that patent beyond its scope.

45.    By their conduct, the counterdefendants improperly assert the claims of the '694 patent beyond their scope.

46.    Counterdefendants' illegal predatory conduct has created a dangerous probability of success in monopolizing this market or related sub-markets and has damaged and continues to damage CryoCath and consumers.

47.    This action is motivated solely by a desire to impose anticompetitive injury on CryoCath rather than to obtain a justifiable legal remedy.

48.    Counterdefendants took these actions with the specific intent and purpose to monopolize or maintain CryoCor's monopoly in the relevant market or in one or more related sub-markets.

49.    This conduct has anticompetitive effects, constitutes patent misuse and has already damaged and will continue to damage CryoCath in amount equal to at least its costs of suit to defend against the claim, and additionally in an amount to be quantified through discovery and

trial, including costs of defending against meritless claims of patent infringement and costs in

disrupted business and lost opportunities to pursue legitimate competition.

50.     Unless counterdefendants are enjoined from continuing their anticompetitive conduct,

CryoCath, as well as other competitors in the relevant market and consumers of these

cryosurgical devices, will suffer irreparable harm for which there is no adequate remedy at law.

51.     Counterdefendants' conduct violates Section 2 of the Sherman Act and constitutes

attempted monopolization.

52.     Counterdefendants' conduct constitutes patent misuse.

**Count IV: Sham Litigation**

53.     CryoCath incorporates paragraphs 1-52.

54.     Counterdefendants' assertion of the '694 patent constitutes sham litigation.

55.     That sham litigation has already damaged and will continue to damage CryoCath in an

amount equal to at least its costs to defend against the claim, and additionally damages in an

amount to be quantified through discovery and trial.

**Count V: Declaratory Judgment the '610 Patent Is Not Infringed**

56.     CryoCath incorporates paragraphs 1-55.

57.     Counterdefendants filed this action alleging that CryoCath infringes the '610 patent.

58.     An actual and justiciable case and controversy exists as to that alleged infringement,

unless the Counterdefendants lack standing to assert that patent.

59.     CryoCath does not infringe any claim of the '610 patent.

**Count VI: Declaratory Judgment the '610 Patent Is Not Valid**

60.     CryoCath incorporates paragraphs 1-59.

61.     The claims of the '610 patent are invalid under 35 U.S.C. §§ 102, 103, 112 or 120.

### Count VII: Declaratory Judgment the '694 Patent Is Not Infringed

62.    CryoCath incorporates paragraphs 1-61.

63.    Counterdefendants filed this action alleging that CryoCath infringes the '694 patent.

64.    An actual and justiciable case and controversy exists as to that alleged infringement,

unless the Counterdefendants lack standing to assert that patent.

65.    CryoCath does not infringe any claim of the '694 patent.

### Count VIII: Declaratory Judgment the '694 Patent Is Not Valid

66.    CryoCath incorporates paragraphs 1-65.

67.    The claims of the '694 patent are invalid under 35 U.S.C. §§ 102, 103, 112 or 120.

### Count IX: Delaware Unfair Competition

68.    CryoCath incorporates paragraphs 1-55.

69.    Counterdefendants' actions constitute unfair methods of competition.

70.    Counterdefendants' actions have damaged CryoCath and will continue to damage

CryoCath in an amount equal to at least its costs to defend against the claim, and additionally in

an amount to be quantified through discovery and trial.

71.    Counterdefendants' actions constitute common law unfair competition.

### PRAYER FOR RELIEF

CryoCath respectfully requests this Court enter judgment in favor of CryoCath and

against the Counterdefendants including an Order granting CryoCath the following relief:

A.    A declaration that the claims of the '610 patent are invalid;

B.    A declaration that CryoCath does not infringe any claim of the '610 patent;

C.    A declaration that the claims of the '694 patent are invalid;

D.    A declaration that CryoCath does not infringe any claim of the '694 patent;

E.    A declaration that the '694 patent is not enforceable against CryoCath at least because of the doctrine of patent misuse;

F.    A declaration that the counterdefendants' case based on the '694 patent constitutes sham litigation, a violation of the Sherman Act Section 2, and patent misuse;

G.    A declaration that the counterdefendants violated Delaware unfair competition common law;

H.    Judgment that counterdefendant CryoCor infringes CryoCath's '355 patent;

I.    Entry of a preliminary injunction under 35 U.S.C. § 283, enjoining CryoCor, its officers, agents, servants, and employees, and those persons acting in active concert or participation with any of them, from infringing, either directly (by using, making, selling, offering to sell or importing) or indirectly (by inducement or contribution) CryoCath's '355 patent;

J.    Entry of a permanent injunction under 35 U.S.C. § 283, enjoining CryoCor, its officers, agents, servants, and employees, and those persons acting in active concert or participation with any of them, from infringing, either directly (by using, making, selling, offering to sell or importing) or indirectly (by inducement or contribution) CryoCath's '355 patent;

K.    An award of damages under 35 U.S.C. § 284 sufficient to compensate CryoCath for CryoCor's infringement of each of CryoCath's patents identified in this Complaint, the award in an amount not less than a reasonable royalty;

L.    An award of prejudgment interest under 35 U.S.C. § 284;

M.    An award of postjudgment interest under 35 U.S.C. § 284;

N.    A declaration that this case is exceptional under 35 U.S.C. § 285 at least because CryoCor willfully infringed CryoCath's '355 patent;

O.     An award of increased damages under 35 U.S.C. § 285 of three times the amount of the

damages found by the jury or assessed by this Court to compensate CryoCath for CryoCor's

willful infringement;

P.     A postjudgment equitable accounting of damages for the period of infringement of each

of CryoCath's patents identified in this Complaint following the period of damages established at

trial;

Q.     An award of CryoCath's costs of suit, including reasonable attorneys' fees, under 35

U.S.C. §§ 284 and 285;

R.     An Order that CryoCor's officers are vicariously liable for CryoCor's infringement of

CryoCath's '355 patent; and

S.     Such further relief the Court deems appropriate.

ASHBY & GEDDES

/s/ *John G. Day*

John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendant and
Counterclaimant CryoCath
Technologies, Inc.*

*Of Counsel:*

Jason R. Buratti
Jeffery L. Kamenetsky
Joseph R. Englander
Christopher & Weisberg, P.A.
200 East Las Olas Boulevard
Suite 2040
Fort Lauderdale, Florida 33301
(954) 828-1488

Dated:  February 4, 2008
187891.1

# EXHIBIT A



US005147355A

# United States Patent [19]

## Friedman et al.

| | |
|---|---|
| [11] | **Patent Number:** | **5,147,355** |
| [45] | **Date of Patent:** | **Sep. 15, 1992** |

[54] **CRYOABLATION CATHETER AND METHOD OF PERFORMING CRYOABLATION**

[75] Inventors: **Peter L. Friedman**, Rowley; **Paul Wang**, Brookline; **Ernest G. Cravalho**, Wellesley Hills, all of Mass.

[73] Assignee: **Brigham and Womens Hospital**, Boston, Mass.

[21] Appl. No.: **249,343**

[22] Filed: **Sep. 23, 1988**

[51] Int. Cl.$^5$ .......................................... A61B 17/36
[52] U.S. Cl. .......................................... 606/23; 606/21
[58] Field of Search ...................................... 606/20–26; 128/303.1, 362, 399–401, DIG. 27; 604/113

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,272,203 | 9/1966 | Chato | 606/26 |
| 3,298,371 | 1/1967 | Lee | 606/23 |
| 3,393,679 | 7/1968 | Crump et al. | 606/26 |
| 3,425,419 | 2/1969 | Dato | 606/22 |
| 3,512,531 | 5/1970 | Crump et al. | 606/26 |
| 3,548,829 | 12/1970 | Reynolds et al. | |
| 3,644,344 | 5/1972 | Bryne | |
| 3,823,718 | 7/1974 | Tromovitch | |
| 3,859,986 | 1/1975 | Okada et al. | 606/20 X |
| 3,910,277 | 10/1975 | Zimmer | |
| 3,971,383 | 7/1976 | von Gerven | 606/23 |
| 4,029,102 | 6/1977 | Barger | |
| 4,202,336 | 5/1980 | Van Gerven | 606/21 |
| 4,207,897 | 6/1980 | Lloyd et al. | |
| 4,275,734 | 6/1981 | Mitchiner | 606/23 |
| 4,278,090 | 7/1981 | Van Gerven | 606/23 |
| 4,406,656 | 9/1983 | Hattler et al. | |
| 4,519,389 | 5/1985 | Gudkin et al. | |
| 4,860,744 | 8/1989 | Johnson et al. | 606/21 X |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 2731651 | 1/1979 | Fed. Rep. of Germany . |
| 2477406 | 3/1980 | France . |
| 86/000232 | 1/1986 | PCT Int'l Appl. . |
| 532976 | 10/1978 | U.S.S.R. . |
| 2226497 | 4/1990 | United Kingdom . |

### OTHER PUBLICATIONS

Frigitronics CCS–100 Cardiac Cryosurgical System Frigitronics of Connecticut Incorporated, May 1984.

*Primary Examiner*—John D. Yasko
*Assistant Examiner*—Adam J. Cermak
*Attorney, Agent, or Firm*—Sterne, Kessler, Goldstein & Fox

[57] **ABSTRACT**

A method and apparatus is provided for cryogenically ablating a predetermined portion of tissue in the body of a patient. Cryoablation is accomplished by a cryoblation catheter having a hollow shaft insertable into the blood vessel of a patient. The shaft has a closed tip portion and a fluid flow passage for directing a flow of cryogenic fluid to the tip. Cryogenic cooling is effected by a liquid-to-gas fluid phase change adjacent the catheter tip. Electrical signal activity may be monitored by an electrode formed integral with the tip to confirm treatment of the paper tissue site.

**6 Claims, 2 Drawing Sheets**





*FIG. 1*



*FIG. 2*

5,147,355

**1**

# CRYOABLATION CATHETER AND METHOD OF PERFORMING CRYOABLATION

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention pertains to catheters, and more particularly to catheters for cryosurgically treating tissue within the body of a patient.

### 2. Description of the Related Art

Cryosurgery has achieved wide acceptance in many fields of therapeutic medicine. For example, cryosurgical instruments have been used in the extraction of cataractous lenses of the eye, to freeze human tissue to effect necrosis, to form scar tissue, and to repair detached retinas. Examples of cryosurgical instruments are disclosed in U.S. Pat. Nos. 3,548,829; 2,664,344; and 4,039,102.

In recent years, cryosurgery has been employed to ablate particular regions of the heart during open heart surgery. Once the chest cavity of a patient has been opened to expose the heart, a hand-held cryoprobe is advanced to a particular region of the heart believed to be the cause of certain cardiac abnormalities such as arrhythmia. A super-cooled fluid is passed to the tip of the probe to destroy by rapid freezing the abnormal tissue adjacent the probe tip. Such cryosurgical treatment is advantageous because it permits localized and highly specific tissue treatment. However, it can only be used during the course of open heart surgery. Despite recent advances, such open heart surgery is associated with considerable morbidity and mortality.

The management of patients with cardiac arrhythmia has posed a vexing clinical problem. Despite the recent introduction of several powerful anti-arrhythmic drugs, many arrhythmias for reasons yet unknown cannot be suppressed pharmacologically. Patients who do not respond to drug therapy develop an alarmingly high incidence of serious drug-induced side effects and are faced with the inconvenience and expense of taking medication several times a day. Alternative forms of antiarrhythmic therapy which have been recently developed, such as using pacemakers capable of terminating tachycardia, have proven successful in only a limited number of patients. Surgical ablation of some cardiac arrhythmias is also possible in some patients. However, this technique of treatment is associated with considerable morbidity and mortality due to the use of general anesthesia and cardiopulmonary bypass. Consequently, there is a need for a less surgically invasive, more acceptable form of treatment.

Since many cardiac arrhythmias arise from discrete, easily definable regions of the heart that are readily accessible during the course of cardiac catheterization, attention has recently turned to the possibility of ablating arrhythmogenic foci non-surgically using catheterization techniques. Delivery of high-energy DC electric shocks through intracardiac electrode catheters positioned fluoroscopically near the His bundle has been used successfully to produce A-V block in patients having rapid ventricular rates during refractory atrial fibrillation, atrial flutter or other supra-ventricular tachycardias. This same technique has been used to ablate accessory A-V pathways near the mouth of the coronary sinus in some patients suffering from Wolff-Parkinson-Wright syndrome. Unfortunately, the delivery of such high energy intracardiac shocks produces tissue damage that cannot be graded or accurately con-

**2**

fined to a small area. This tissue damage may result in serious complications in some patients, and may even produce new arrhythmogenic foci.

Accordingly, it is an object of the present invention to provide a treatment for cardiac arrhythmias that is not accompanied by the problems attendant to previous forms of treatment.

It is another object of the present invention to provide a treatment for cardiac arrhythmias which is comparatively less invasive than other forms of treatment.

Yet another object of the present invention is to provide a treatment for cardiac arrhythmias that permits the identification and highly specific cyrogenic treatment of abnormal cardiac tissue.

Still yet another object of the present invention is to provide a catheter capable of ablating abnormal tissue located virtually anywhere in the body of a patient that is accessible through the circulatory system.

## SUMMARY OF THE INVENTION

The present invention provides a method and apparatus for cyrogenically ablating a predetermined portion of tissue in the body of a patient. The apparatus comprises a catheter having a hollow shaft insertable into a blood vessel of the patient. The shaft includes a closed tip portion and a fluid flow passage. Means is provided for coupling the fluid flow passage to a source of cyrogenic fluid to provide a flow of cryogenic fluid to the tip of the catheter shaft.

In a further aspect of the invention, means adjacent the tip is provided for effecting a liquid-to-gas phase change in the cryogenic liquid to effect cooling of the tip. Controlling means remote from the tip governs the rate at which the cryogenic fluid phase change occurs. Preferably, a second fluid flow passage is provided to remove gas from the tip, the fluid flow passages being arranged concentrically adjacent the tip. In a preferred embodiment, the phase change is effected by a Joule-Thomson valve positioned adjacent an end of one of the fluid flow passages. Electrical signal sensing means formed integrally with the catheter may be provided to detect electrical signal activity from a predetermined portion of the body of the patient, such as the tissue adjacent the tip of the catheter. The flow of cryogenic fluid to the tip portion is controllable to provide reversible cooling of the tissue adjacent the tip portion to prevent irreversible tissue damage. The preferred cryogenic fluid is liquid nitrous oxide.

In the method of the invention, a catheter having a closed tip portion is inserted into a blood vessel of a patient. The catheter is guided to a predetermined portion of the patient's body and is positioned so that the tip is adjacent the tissue to be ablated. A flow of cyrogenic fluid is directed to the tip and a liquid-to-gas phase change in the cryogen is effected thereat. The preferred cryogenic fluid is nitrous oxide. The gaseous nitrous oxide is removed from the tip. Means such as a valve remote from the catheter tip controls the flow of cyrogenic fluid to the tip to vary the temperature and rate of cooling of the tip. Electrical activity from a predetermined portion of the patient's body may be sensed substantially simultaneously with tissue ablation by an electrode integral with the tip.

## BRIEF DESCRIPTION OF THE DRAWINGS

The foregoing and other objects, aspects, uses and advantages of the present invention will be more fully

5,147,355

| 3 | 4 |

appreciated as the same become better understood from the following detailed description of the present invention when considered in connection with the accompanying drawings, in which:

FIG. 1 is a schematic illustration of the catheter of the present invention in cross-section; and

FIG. 2 is a schematic illustration of the catheter of the present invention in use in the body of a patient.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring now to the drawing figures, wherein like reference numerals represent identical or corresponding parts throughout the several views, a cryoablation catheter denoted generally at 10 includes a catheter 12 insertable into a blood vessel 14 of a patient 16. The distal end 18 of the portion of the catheter shaft 12 that is insertable into the blood vessel is closed to provide a closed tip portion 20.

Catheter shaft 12 includes first and second fluid flow passages 22, 24 that are preferably arranged in a concentric manner adjacent the tip portion 20 of the shaft 12. The flow passages 22, 24 are preferably formed from a material such as stainless steel that is capable of withstanding the high pressures and low temperatures attendant to the handling of a liquid-to-gas phase change in a cryogenic fluid. Details of the phase change are provided below. In the preferred embodiment, the flow passages 22, 24 are formed from a pair of concentric, annealed thin-walled stainless steel tubes approximately 1 mm and 3 mm, respectively, in diameter. Outer fluid flow passage 24 is vented to the atmosphere adjacent the proximal end 26 of the catheter shaft 12. Alternatively, outer flow passage 24 may be coupled to the source 30 of cryogenic fluid to provide a closed system for the return of gaseous N$_2$O for reprocessing into liquid form. The cryogenic liquid source 30 is coupled via conduit 28 to the inner fluid flow passage 22 of the catheter shaft 12 through a flow control valve 32. Flow control valve 32 may be modulated to regulate the amount of cryogenic liquid delivered to the catheter tip 20, and therefore the temperature and rate of tip cooling.

Cryogenic cooling occurs adjacent the catheter tip 20 as a result of a liquid-to-gas phase change that takes place in the cryogenic fluid. A cryogenic fluid such as liquid nitrous oxide is supplied under pressure to a Joule-Thomson valve 34 positioned adjacent the distal end 36 of the inner fluid flow passage 22. The Joule-Thomson valve 34 effects the phase change by directing the pressurized fluid to the tip 20 of the catheter, where it undergoes rapid expansion and transformation into a gaseous state. This transformation is accompanied by rapid and extreme cooling, as temperatures as low as −60° C. can be attained. The gas is conducted away from the tip 20 through the outer fluid flow passage 24 and is vented to the atmosphere or recycled to the source 30, as discussed above. The tip 20 is preferably formed from any suitable material having a high coefficient of thermal conductivity, such as silver, gold and platinum.

With particular reference to FIG. 2, the cryoablation catheter 10 is depicted positioned in a blood vessel 14 of a patient 16. The tip 20 of the catheter is positioned into abutment with the predetermined portion of tissue 50 selected for ablation.

The arrhythmogenic foci of cardiac arrhythmeia are particularly well suited for ablation in accordance with the present invention, as they are readily identifiable and accessible via catheterization techniques. The catheter 10 is typically guided around anatomical curves to its target tissue through the use of conventional radioimaging techniques such as fluoroscopy. Delivery of the catheter to the tissue 50 to be ablated is facilitated through the monitoring of electrical signal information provided by an electrode 38 positioned adjacent the catheter tip 20. A wire 40 extends from the electrode 38 to a signal monitor 42 having a display 44 for displaying the signal activity detected by the electrode. As cryoablation of the tissue 50 proceeds, changes in the electrical environment surrounding the catheter may be detected by an electrode 38. While the principal use of the electrical signal is to locate the tissue to be ablated, another use may be to monitor changes in the electrical environment surrounding the catheter at tissue 50, in order to provide an indication of the effectiveness of cryoablation and whether the proper tissue has been treated. For example, if during the course of cryoablation an arrhythmic signal continues to be detected by the electrode 38, the flow of cryogenic liquid to the catheter tip 20 may be terminated so as to curtail ablation of the tissue adjacent the tip 20. Normal tissue temperature will be restored by the flow of blood thereby. The catheter tip 20 may then be re-positioned to cryogenically ablate another section of tissue suspected as being the source of the abnormality for which treatment is sought. A desirable signal display 44 following tissue cryoablation confirms targeting of the abnormal tissue and the effectiveness of the treatment.

The principles, preferred embodiments and modes of operation of the present invention have been described in the foregoing specification. The invention which is intended to be protected herein should not, however, be construed as limited to the particular forms disclosed, as these are to be regarded as illustrative rather than restrictive. Variations and changes may be made by those skilled in the art without departing from the spirit of the present invention. Accordingly, the foregoing detailed description should be considered exemplary in nature and not limited to the scope and spirit of the invention as set forth in the attached claims.

What is claimed is:

1. A method of cryogenically ablating a predetermined portion of tissue within a blood vessel of a patient, comprising the steps of:

inserting a catheter having a tip portion into the lumen of the blood vessel;

guiding said catheter to a predetermined portion of the patient's body and positioning said tip portion adjacent tissue within the lumen of the blood vessel to be ablated;

directing a flow of cryogenic fluid to said tip portion;

effecting a cooling of said cryogenic fluid adjacent said tip portion; and

removing said fluid from said tip portion.

2. A method according to claim 1, wherein said step of directing said flow of cryogenic fluid comprises directing said fluid to said catheter tip through a first fluid flow passage formed in said catheter and said step of removing said fluid comprises directing said fluid through a second fluid flow passage formed in said catheter.

3. A method according to claim 1, further comprising the step of controlling said flow of cryogenic fluid remote from said catheter tip to vary the temperature and rate of cooling of said tip portion.

5,147,355

5

**4.** A method according to claim 3, further comprising the step of throttling said flow of cryogenic fluid to provide reversible cooling of said tissue adjacent said catheter tip portion.

**5.** A method according to claim 1, further comprising the step of sensing electrical activity from said predeter-

6

mined portion of the body with a device integral with said tip.

**6.** A method according to claim 5, wherein the steps of sensing said electrical activity and ablating said tissue occur substantially simultaneously.

* * * * *

10

15

20

25

30

35

40

45

50

55

60

65