# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

CRYOCOR, INC. and )
AMS RESEARCH CORPORATION, )
)
      Plaintiffs, )   C.A. No. 08-31-GMS
)
  v. )
)   **JURY TRIAL DEMANDED**
CRYOCATH TECHNOLOGIES, INC., )
)
      Defendant. )

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS III, IV, AND XI OF DEFENDANT'S COUNTERCLAIMS, OR, IN THE ALTERNATIVE, TO BIFURCATE AND STAY THE SAME

OF COUNSEL:

Leland G. Hansen
Wil Rao
Andrew W. Bateman
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
Tel: (312) 775-8000
*Attorneys For AMS Research Corp.*

Howard N. Wisnia
James P. Conley
BAKER & MCKENZIE
12544 High Bluff Drive, Third Floor
San Diego, California 92130-3051
Tel: (858) 523-6200
*Attorneys For CryoCor, Inc.*

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys For Plaintiffs CryoCor, Inc. and
AMS Research Corporation*

Dated: May 1, 2008
862775 / 32647

**TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................... 1

II.    ARGUMENT ......................................................................................... 2

       A.    Defendant Contradicts the Supreme Court's Pleading Standard ........................... 2

             1.    Defendant's Counterclaims Fail To Comply With *Twombly* .................... 2

             2.    No Legal Authority Entitles Defendant's Antitrust Claims To A
                   More Lenient Pleading Requirement ........................................................ 3

       B.    Defendant's Counts III, IV And IX Fail To State Claim Upon Which
             Relief Can Be Granted ........................................................................................ 4

             1.    Patent Misuse Is Not A Counterclaim, But That's What Defendant
                   Pled ................................................................................................................ 5

             2.    Defendant Failed To Sufficiently Plead Both Elements Of A Sham
                   Litigation Exception To Plaintiffs' Immunity ......................................... 6

             3.    Noerr-Pennington Immunity Is Absolute Absent Known
                   Exceptions ................................................................................................... 8

             4.    Defendant's Arguments Now Claiming "Bad Faith," When "Bad
                   Faith" Was Not Pled, Lack Merit ............................................................. 9

       C.    Defendant's Count III Antitrust Counterclaim Is Factually And Legally
             Flawed ............................................................................................................... 10

             1.    Sham Litigation By Itself Is Not A Cognizable Antitrust Violation ........ 10

             2.    Defendant Did Not Plead A Legally Cognizable Antitrust Injury ............ 11

             3.    Defendant's Conclusory, Formulaic Recitation Of The Elements
                   Of Its Monopolization Claim Do Not Satisfy The Pleading
                   Requirements ............................................................................................. 12

                   a.    Count III Failed To Sufficiently Plead A Relevant Market .......... 13

                   b.    Defendant's Product Interchangeability Argument Is
                         Unsupported By Fact ...................................................................... 14

                   c.    Defendant Failed To Sufficiently Allege Anticompetitive
                         Conduct ........................................................................................... 15

             4.    Defendant's Count III Attempted Monopolization Claims Are
                   Factually And Legally Flawed ................................................................... 16

D.    Defendant's Arguments Against Bifurcation And Stay Should Be Rejected As Defendant Misstates Its Cited Case Law And The Necessary Additional Discovery ............................................................................................ 17

III.    CONCLUSION ................................................................................................................ 19

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Bell Atlantic Corp. v. Twombly,*
  127 S. Ct. 1955 (2007) ............................................................................... *passim*

*Brown Shoe Co. v. U.S.,*
  370 U.S. 294 (1962) ............................................................................................14

*C.R. Bard v. M3 Sys., Inc.*
  157 F.3d 1340 (Fed. Cir. 1998) ..........................................................................7

*Cognex Corp. v. Nat'l Instruments Corp.,*
  C. A. No. 00-443-JJF, 2001 U.S. Dist. LEXIS 25555 (D. Del. June 29, 2001) ...............17, 18

*Enzo Life Scis., Inc. v. Digene Corp.,*
  295 F. Supp. 2d 424 (D. Del. 2003) ..................................................................4

*George Haug Co., Inc.  v. Rolls Royce Motor Cars, Inc.,*
  148 F.3d 136 (2d Cir. 1998) ..............................................................................16

*Harrison Aire, Inc. v. Aerostar Int'l, Inc.,*
  423 F.3d 374 (3d Cir. 2005), *cert. denied*, 547 U.S. 1020 (2006) ...........................14

*Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.,*
  343 F. Supp.2d 272 (D. Del. 2004), *aff'd*, 488 F.3d 982 (Fed. Cir. 2007) .................9

*Hosp. Bldg. Co. v. Trs. of Rex Hosp.,*
  425 U.S. 738 (1976) ..........................................................................................3, 4

*Ideal Dairy Farms v. John Labatt, Ltd.,*
  90 F.3d 737 (3d Cir. 1996) ................................................................................4

*Joy v. Healthcare C.M.S.,*
  534 F. Supp. 2d 482 (D. Del. 2008) ..................................................................2, 6

*Kellam Energy, Inc. v. Duncan,*
  668 F. Supp. 861 (D. Del. 1987) .......................................................................4

*Menkowitz v. Pottstown Mem'l Med. Ctr.,*
  154 F.3d 113 (3d Cir. 1998) ..............................................................................4

*Nami v. Fauver,*
  82 F.3d 63 (3d Cir. 1996) ..................................................................................4

*Nobelpharma Ab v. Implant Innovations, Inc.*,
   141 F.3d 1059 (Fed. Cir. 1998)...........................................................................................11

*Parker v. Learn the Skills Corp.*,
   C. A. No. 06-229-SLR, 2008 U.S. Dist. LEXIS 1811 (D. Del. Jan. 10, 2008) .................11, 15

*Pegasus Dev. Corp. v. DIRECTV, Inc.*,
   C. A. No. 00-1020-GMS, 2003 U.S. Dist. LEXIS 8052 (D. Del. May 14, 2003)...................18

*Phillips v. County of Allegheny*,
   515 F.3d 224 (3d Cir. 2007)..........................................................................................2, 4, 6

*Poller v. Columbia Broadcasting*,
   368 U.S. 464 (1962).........................................................................................................3, 4

*Prof'l Real Estate Investors v. Columbia Pictures Indus.*
   508 U.S. 49 (1993)..............................................................................................6, 7, 10, 11

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
   360 F.3d 1295 (Fed. Cir. 2004).............................................................................................9

*Queen City Pizza, Inc.  v. Domino's Pizza, Inc.*,
   124 F.3d 430 (3d Cir. 1997)................................................................................................14

*Unitherm Food Sys. v. Swift-Eckrich, Inc.*,
   375 F.3d 1341 (Fed. Cir. 2004), *rev'd on other grounds*, 546 U.S. 394 (2006) .................8, 11

*Zenith Elecs. Corp. v. Exzec, Inc.*,
   182 F.3d 1341 (Fed. Cir. 2004)..............................................................................................9

## FEDERAL STATUTES

Fed. R. Civ. P. 2(b)(6)...................................................................................*passim*

## I.    INTRODUCTION

In its Answering Brief, Defendant CryoCath misstates the law and manufactures facts in defending its failure to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–66, 1970, 1974 (2007).  Such arguments cannot undo Defendant's pleading of "labels and conclusions, and a formulaic recitation of the elements," which are legally insufficient to state a claim. *Id.* at 1966.

Defendant rests its Answering Brief on the wrong legal standard.  In its Answering Brief, for example, Defendant asserts that Fed. R. Civ. P. 12(b)(6) "only asks if claims are stated." (D.I. 18, "Opp'n" at 1.)  Yet Defendant's position ignores Supreme Court precedent.  In fact, the Supreme Court mandated that the claims be plead with *sufficient factual allegations*.  *See, e.g., Twombly*, 127 S. Ct. at 1964-65 (2007).

Likewise, Defendant's Brief is littered with misleading assertions that it must hope will go undetected by this Court.  For example, Defendant's Brief *says* that *Plaintiffs* are attempting to create a patent misuse counterclaim and "[t]here is no counterclaim for patent misuse." (Opp'n at 19.)  Yet that is false.  In fact, Count III of Defendant's Amended Counterclaim is titled "Count III: ___*Patent Misuse*___ and Sherman Act Section 2," and concludes by alleging "Counterdefendants' conduct constitutes patent misuse." (D.I. 10 at 9, ¶ 62 (emphasis added).)

For these reasons and those stated below, pursuant to FED. R. CIV. P. 12(b)(6), Counts III, IV, and XI of Defendant's counterclaims should be dismissed.  At a minimum, this Court should bifurcate and stay Counts III, IV, and XI and all related discovery, until after Plaintiffs' patent infringement claims are finally resolved.

## II.    ARGUMENT

As detailed in Plaintiffs' Opening Brief, multiple independent grounds exist for dismissal of Counts III, IV and IX under Fed. R. Civ. P. 12(b)(6). Defendant's Answering Brief fails to raise any legitimate legal or factual basis for denying Plaintiffs' motion.

### A.    Defendant Contradicts The Supreme Court's Pleading Standard

#### 1.    Defendant's Counterclaims Fail To Comply With *Twombly*

Throughout its Brief, Defendant erroneously relies on a notice pleading standard that has been rejected by the Supreme Court in *Twombly*. 127 S. Ct. 1955. Defendant asserts that the notice pleading requirements do not require any type of "showings" in the pleadings. (Opp'n at 9 ("that information need not be set out in pleadings.").) Defendant misstates the law.

In *Twombly,* the Supreme Court held that a claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S. Ct. at 1964-65. Further, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* And as the Third Circuit and this District Court have held in post-*Twombly* cases, "Rule 8 'requires a '***showing***,' rather than a blanket assertion, of entitlement to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2007) (*citing Twombly*, 127 S. Ct. at 1966) (emphasis added); *Joy v. Healthcare C.M.S.,* 534 F. Supp. 2d 482, 484 (D. Del. 2008). Defendant was required to plead "enough facts to state a claim to relief that is plausible on its face," so as to cross from "the factually neutral" to "the factually suggestive." *Id.* at 1974.

Here, with apparent disregard for this legal requirement, Defendant's Answering Brief imprudently asserts that Rule 12(b)(6) "only asks if claims are stated" (Opp'n at 1.) Moreover, Defendant asserts that:

- it only needed to provide a "notice of transaction" without any factual allegations in support of its claims (*id.* at 6); and

- its "pleadings allege the plaintiffs' litigation is a sham, fulfilling the notice pleading requirement" (*id.* at 10.)

Defendant goes so far as to contend that it does "*not need to do more than use the word*" such as "monopoly power."[1] (*See id.* at 17 n. 22 (emphasis added).)

Defendant mistakenly asserts notice pleading requirements are satisfied by merely pleading labels, conclusions, and a formulaic recitation of the required elements. Plainly, Defendant's failure to sufficiently plead justifies dismissal of Counts III, IV, and IX of Defendant's counterclaim.

### 2. No Legal Authority Entitles Defendant's Antitrust Claims To A More Lenient Pleading Requirement

Defendant contends in its Answering Brief that dismissal under Rule 12(b)(6) should be "very sparingly" granted for antitrust cases, citing *Poller v. Columbia Broadcasting*, 368 U.S. 464 (1962) and *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738 (1976). (Opp'n at 7.) Defendant contends these cases require stricter standards to justify dismissal. Defendant's assertion is without merit for several reasons.

First, the Supreme Court in *Twombly* authorized dismissal of antitrust claims during the early stages of litigation. *Twombly*, 127 S. Ct. at 1966–67 ("[P]roceeding to antitrust discovery can be expensive."). The Court explained "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 1967 (citations omitted). Otherwise, a "wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the *possibility* that a plaintiff

---

[1] Defendant contends without support that "the plaintiffs admit they have notice of the elements of CryoCath's counterclaims." (Opp'n at 1.) Plaintiffs have made no such admission.

*might* later establish some "set of [undisclosed] facts" to support recovery." *Id.* at 1968 (emphasis added).

Second, the so-called "slightly stricter standard of review" for summary judgment motions in antitrust cases stated in *Poller* was "abandoned in *Eastman Kodak Co. v. Image Technical Servs., Inc.* 504 U.S. 451 (1992)." *Ideal Dairy Farms v. John Labatt, Ltd.*, 90 F.3d 737, 747 (3d Cir. 1996). Instead, "the ordinary standard applies." *Id.*; *see also Kellam Energy, Inc. v. Duncan*, 668 F. Supp. 861, 871 (D. Del. 1987).

Third, Defendant's reliance on *Hosp. Bldg. Co.* is equally inappropriate. That case is premised on authority, namely *Conley v. Gibson*, which the Supreme Court in *Twombly* explicitly overruled. *Twombly*, 127 S. Ct. at 1968 (explaining that *Conley's* "no set of facts language" "[...]after puzzling the profession for 50 years [...] has earned its retirement.") *See also Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).[2] Accordingly, contrary to Defendant's assertion, the law does not impose a stricter standard for motions challenging antitrust pleadings.

### B. Defendant's Counts III, IV And IX Fail To State Claims Upon Which Relief Can Be Granted

Defendant premises Counts III, IV, and IX on Plaintiffs' enforcement of two of the three duly issued patents-in-suit to stop Defendant's ongoing patent infringement.[3] Under the *Noerr-*

---

[2] The other pre-*Twombly* cases Defendant that relied on cannot support its argument. Opp'n at 6. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996), relies on *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124 (3d Cir. 1998), which cites *Conley*. *Enzo Life Scis., Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 426 (D. Del. 2003) relies on *Conley*. *Twombly* requires that Defendants provide notice of its claim through a "showing" of its entitlement of relief.

[3] Defendant claims that Plaintiffs "did not even identify an element missing from CryoCath's pleading Counts IV and XI," arguing "[s]ince the plaintiffs' Rule 12(b)(6) motion depends upon a failure to state a claim, their failure to identify a missing claim element compels denial of their

*Pennington* doctrine, Plaintiffs have immunity from the type of antitrust and unfair competition violations asserted in Counts III and IX. An exception to *Noerr-Pennington* immunity exists if the litigation constitutes sham litigation. (*See* Br. at 11-12.)

But Defendant failed to sufficiently plead sham litigation. Even taking Defendant's allegations as true, Defendant's allegations cannot overcome Plaintiffs' *Noerr-Pennington* immunity. Nor do those sham allegations provide a plausible basis for its Count III (Sherman Act Section 2) and Count IX (Delaware Unfair Competition). Accordingly, for at least this reason, Counts III, IV, and IX of Defendant's counterclaims should be dismissed.

### 1.    Patent Misuse Is Not A Counterclaim, But That's What Defendant Pled

Defendant's Opposition claims that Defendant has not asserted a counterclaim for patent misuse. (Opp'n at 19.) Instead, Defendant asserts "plaintiffs try to create in Count III a separate action for patent misuse." (*Id.*) That representation belies the facts.

Below is the heading for Count III, which starts with "Patent Misuse":

> **Count III: Patent Misuse and Violation of Sherman Act Section 2**

Below is the last paragraph in Count III:

> **62.    Counterdefendants' conduct constitutes patent misuse.**

---

motion as to Counts IV and XI." (Opp'n at 2.) This is a baseless argument. Counts IV and XI add no new factual allegations to those alleged in Count III, but rather, merely incorporate the allegations in Count III by reference. It stretches Defendant's credibility to argue that Plaintiffs did not identify an element missing from Counts IV and IX when it did so with respect to allegations in Count III.

Patent misuse is not a counterclaim. (Br. at 26.) But that's exactly what Defendant pled. Defendant's assertion that Count III did not contain a counterclaim of patent misuse strains credulity. Since Defendant now unequivocally states that it is not asserting a patent misuse counterclaim, Defendant's reference to patent misuse in its counterclaims should be stricken from CryoCath's Amended Counterclaims in their entirety.

### 2. Defendant Failed To Sufficiently Plead Both Elements Of A Sham Litigation Exception To Plaintiffs' Immunity

Defendant misguidedly asserts that its "pleadings allege the plaintiffs' litigation is a sham, fulfilling the notice pleading requirement." (Opp'n at 10.) This assertion is directly at odds with *Twombly* and its progeny which state that "Rule 8 'requires a '*showing*,' rather than a blanket assertion, of entitlement to relief." *Phillips*, 515 F.3d at 231 (*citing Twombly*, 127 S. Ct. at 1966) (emphasis added); *Joy*, 534 F. Supp. at 484 (*citing Twombly*, 127 S. Ct. at 1966).

As outlined in Plaintiffs' Opening Brief, Defendant's sham litigation pleadings are: (1) insufficient to show that this lawsuit is objectively baseless; and (2) devoid of any factual allegation that this lawsuit is subjectively motivated by improper purposes. (Br. at 12-16.) In fact, so conclusory is Defendant's pleading in this regard, Defendant's Brief does not mention the Supreme Court's decision in *Prof'l Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49 (1993) ("PRE") or these two required elements of the sham litigation exception to Plaintiffs' *Noerr-Pennington* immunity.

As to the first element, Defendant does not plead that Plaintiffs' claims are objectively baseless, i.e. "no reasonable litigant could expect success on the merits." *PRE*, 508 U.S. at 60. Defendant's pleading is insufficient as evidenced by its reliance on non-specific, undated "publicly available information" of how the accused products operated. Moreover, Defendant's Brief did not identify any authority that such "public" information automatically translates into

objective knowledge of non-infringement under all legal theories of all accused console products. (D.I. ¶ 43.) If that were the basis for a sham litigation claim, then the immunity would be swallowed whole.

As to the second element, Defendant's pleading is devoid of any factual allegation to support the required element that this "lawsuit conceals 'an attempt to interfere *directly* with the business relationships of a competitor ... through the 'use [of] the governmental *process* – as opposed to the *outcome* of that process – as an anticompetitive weapon.'" *PRE*, 508 U.S. at 61. Defendant's Brief does not, and cannot, point to any allegation that this lawsuit conceals "an attempt to interfere *directly* with the business relationships of a competitor." *Id.* Defendant also does not, and cannot, identify any factual allegations of any "abuse of process" or "bad faith." *See C.R. Bard v. M3 Sys., Inc.,* 157 F.3d 1340 at 1368–69 (Fed. Cir. 1998). Instead, Defendant's Brief relies on a "blanket assertion," that the filing of the present lawsuit constitutes "anticompetitive conduct." (*See also* Br. at 15.)

In addition, in its half-page defense of its sham litigation pleadings, Defendant wrongly asserts that Plaintiffs "admit that sham litigation (which CryoCath alleges) is an antitrust violation." (Opp'n at 9 (citing Br. at 8).) Nothing on page 8 of the Opening Brief – which includes Plaintiffs' statement of facts about Defendant's pleadings of the relevant market and patent misuse – can be construed as any such admission. Further, Defendant's misrepresentation regarding Plaintiffs' alleged admission is particularly egregious since it is contrary to case law. The case law is clear that the sham litigation inquiry is to determine whether *Noerr-Pennington* immunity should be stripped, and that sham litigation in itself does not constitute "an antitrust violation," as Defendant erroneously asserts, as discussed more fully below.

Accordingly, Defendant failed to plead sufficient factual allegations to establish an exception to Plaintiffs' *Noerr-Pennington* immunity. Therefore, Counts III, IV, and IX should be dismissed.

### 3. Noerr-Pennington Immunity Is Absolute Absent Known Exceptions

In a transparent attempt to revive its defective pleading, Defendant argues to diminish Plaintiffs' *Noerr-Pennington* immunity. It contends that, contrary to the cited Supreme Court precedent, *Noerr-Pennington* immunity "is hardly absolute" and that "[a]bsent absoluteness, which would require departing from binding precedent, the plaintiffs' motion should be denied to the extent it depends upon the immunity." (Opp'n at 2-3.)

Defendant's "absoluteness" argument lacks merit. Tellingly, Defendant cites no authority (and Plaintiffs are aware of none) that has diminished or eliminated the *Noerr-Pennington* immunity as a result of merely enforcing presumptively valid patent rights. Moreover, Defendant's argument that "[a]bsent absoluteness, which would *require departing from binding precedent*, the plaintiffs' motion should be denied to the extent it depends upon the immunity" is unsupported by law. (Opp'n at 2-3 (emphasis added).) In fact, the Federal Circuit statement that Defendant relies on - "this immunity is hardly absolute" - was made in connection with well-recognized *exceptions* to the *Noerr-Pennington* immunity, such as the *Walker Process* claim. *See Unitherm Food Sys. v. Swift-Eckrich, Inc.,* 375 F.3d 1341, 1356 (Fed. Cir. 2004), *rev'd on other grounds*, 546 U.S. 394 (2006). But Defendant has not pled a *Walker Process* claim.

Defendant's failure to sufficiently plead factual allegations in Count IV (Sham Litigation) that provide "the grounds of [Defendant's] entitlement to relief" requires the dismissal of Counts III (Sherman Act Section 2), IV (Sham Litigation), and IX (Delaware Unfair Competition) due to

Plaintiffs' *Noerr-Pennington* immunity. *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1304–05 (Fed. Cir. 2004); *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 343 F. Supp.2d 272, 324 (D. Del. 2004), *aff'd*, 488 F.3d 982 (Fed. Cir. 2007).

### 4.    Defendant's Arguments Now Claiming "Bad Faith," When "Bad Faith" Was Not Pled, Lack Merit

Defendant improperly attempts to characterize its pleadings as alleging "bad faith" and claims that "[t]he plaintiffs' bad faith infringement allegations strip them of the immunity that the patent law *may* provide." (Opp'n at 9 (citing *Zenith Elecs. Corp. v. Exzec, Inc.* 182 F.3d 1341, 1356 (Fed. Cir. 2004))). While Defendant champions its formulaic recitations of antitrust claim elements as a saving grace, it never pled any allegations of "bad faith" in its counterclaims. *Zenith*, cited and relied on by Defendant, states specifically "bad faith must be alleged and ultimately proven . . ." *Zenith*, 182 F.3d at 1356.

Having not pled the bad faith activities in the market place that *Zenith* discussed, Defendant attempts to recast, as "bad faith," its allegations regarding Plaintiffs' alleged knowledge of accused products' operation and its legal conclusion of non-infringement as "bad faith" allegations. Defendant's pleadings do not show or suggest that Plaintiffs "knowingly" and in "bad faith" asserted two of the patents-in-suit. Defendant's belated after-the-fact attempt to recast its otherwise deficient pleadings as having pled bad faith should be rejected.

Defendant failed to include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. Accordingly, Defendant's pleadings failed to sufficiently plead an exception to Plaintiffs' *Noerr-Pennington* immunity. Without more, Defendant's have not pled sufficiently to pierce Plaintiffs' immunity to any antitrust and unfair competition claims for enforcing their presumptively valid patent rights. Dismissal of Counts III, IV and IX of Defendant's Amended Counterclaims is therefore appropriate.

### C.    Defendant's Count III Antitrust Counterclaim Is Factually And Legally Flawed

As a separate and independent basis for dismissal, Plaintiffs demonstrated in their Opening Brief the severe deficiencies in Defendant's antitrust pleadings. Defendant's pleading insufficiently pleads the elements of the monopolization and attempted monopolization claims under Sherman Act, Section 2. Defendant's Answering Brief fails to address these deficiencies with factually and legally supportable positions.

### 1.    Sham Litigation By Itself Is Not A Cognizable Antitrust Violation

Defendant's assertion that "the plaintiffs essentially admit CryoCath pleads the elements of an antirust counterclaim – sham litigation with specific intent" (Opp'n at 12) is incorrect factually and legally. *See PRE,* 508 U.S. at 60 (referring to the two-prong sham litigation inquiry, "[t]his two-tiered process requires the plaintiff to disprove the challenged lawsuit's *legal* viability before the court will entertain evidence of the suit's *economic* viability."). Defendant's mistaken assertion flows from its apparent confusion regarding the requirements of antitrust violations, and the role of a sham litigation exception to the *Noerr-Pennington* immunity (legal viability) and the elements of the antitrust counterclaims (economic viability). As stated by the Supreme Court:

> Of course, even a [counter]plaintiff who defeats the [counter]defendant's claim to *Noerr* immunity by demonstrating both the objective and the subjective components of a sham must still prove a substantive antitrust violation. *Proof of a sham merely deprives the [counter]defendant of immunity; it does not relieve the [counter]plaintiff of the obligation to establish all other elements of his claim.*

*PRE*, 508 U.S. at 60-61 (emphasis added).[4]  Here, not only has Defendant failed to sufficiently plead to overcome the presumptive immunity enjoyed by Plaintiffs (as shown *supra.*), Defendant also failed to plead sufficient factual allegations of an antitrust violation.  Instead, Defendant merely bootstraps its conclusory sham litigation allegations to its antitrust allegations.  Accordingly, for at least this reason, Defendant's counterclaims should be dismissed.

### 2. Defendant Did Not Plead A Legally Cognizable Antitrust Injury

As detailed in Plaintiffs' Opening Brief, Defendant's Count III failed to plead the requisite antitrust injury.  Antitrust law is designed to protect against harm to competition, rather than to a specific competitor.  (Br. at 22 (citing C. A. No. 06-229-SLR, *Parker v. Learn the Skills Corp.*, 2008 U.S. Dist. LEXIS 1811, at *26 (D. Del. Jan. 10, 2008)).)

Defendant's pleading, however, focused on the alleged injury to Defendant, *e.g.*, its litigation costs, disruption to its business, etc.  (*See* Br. at 17 (citing D.I. 10 ¶ 59).)  Defendant seeks to rely on its conclusory allegation that unless Plaintiffs are enjoined, "CryoCath as well as other competitors in the relevant market and consumers of these cryosurgical devices, will suffer irreparable harm...." (D.I. 10 ¶ 60.)  Defendant apparently takes the view that because Plaintiffs' arguments are directed to the competitors and not consumers, Plaintiffs' alleged failure "to address consumer aspect of the pleading altogether" dictate that "their arguments must fail." (Opp'n at 15.)  However, the allegation Defendant relies on in ¶ 60 of its Amended

---

[4] Even *Unitherm*, a case Defendant repeatedly relies upon, shows that once the determination was made that the *Noerr-Pennington* immunity should be stripped due to a fraud on the patent office (a *Walker Process* claim), the inquiry shifts to the regional law to determine if there was an antitrust violation.  *Unitherm*, 375 F.3d at 1362 ("Once we have determined, as we have here, that a patentee deserves no antitrust immunity, our inquiry shifts to apply the substantive antitrust laws of the regional circuit.") (citing *Nobelpharma Ab v. Implant Innovations, Inc.,* 141 F.3d 1059, 1068 (Fed. Cir. 1998).

Counterclaims with respect to consumers is just as bald and conclusory as its allegation directed to competitors. Defendant's allegations are not plausible.

In addition, Defendant argues that eliminating competition in the limited market for cryosurgical products to treat heart disorders would destroy the competitive dynamics in view of Plaintiff CryoCor's belief that it has legal barriers to entry based on its intellectual property portfolio. (Opp'n at 15.) But Plaintiff CryoCor's statements of a "comprehensive intellectual property (IP) portfolio provides a formidable barrier of entry" have nothing to do with any antitrust injury analysis in this case since the aforementioned "comprehensive IP portfolio" is not at issue here. (Ex. C to Opp'n (incorrectly cited as Ex. B in Opp'n at 15).) Defendant's assertion again is too nebulous. Furthermore, contrary to Defendant's suggestion, this statement does not automatically expose Plaintiff CryoCor to antitrust liability when it seeks to enforce its patent rights. And Defendant's reliance in its Answering Brief on matters outside of its pleadings only serves to further demonstrate the insufficiencies of its antitrust pleadings.

### 3. Defendant's Conclusory, Formulaic Recitation Of The Elements Of Its Monopolization Claim Do Not Satisfy The Pleading Requirements

Defendant has outsold Plaintiff CryoCor $11.7 million to $46,000 in a quarter of a year, and continually is outselling CryoCor.[5] Yet Defendant alleges in Count III that Plaintiff CryoCor has a monopoly or near monopoly and has, by virtue of instituting this patent-infringement action, violated Section 2 of the Sherman Act. (*Id.* ¶ 61.) As explained in the

---

[5] Third Quarter Report, CryoCath Technologies, Inc., at 2, *available at* http://www.cryocath.com/en/3.investors/pdf/2007.q3.report.pdf (D.I. 12 at Ex. B); http://www.cryocath.com/ en/7.news/7.0.news.asp?id=635 (*Id.* at Ex. C); Form 10-Q, CryoCor, Inc. at 4 (For the quarterly period ended September 30, 2007), *available at* http://www.secinfo.com/d14D5a.u7Hg8.htm (*Id.* Ex. D).

Plaintiffs' Opening Brief, such a claim is not supported by the law. Defendant failed to sufficiently plead required elements of its monopolization claims.

### a.    Count III Failed To Sufficiently Plead A Relevant Market

Defendant's pleadings failed to properly allege that Plaintiffs possess monopoly power in a relevant market defined in a meaningful economic sense. (Br. at 18-21.) Defendant's Brief does nothing to change that failure.

In response, Defendant asserts that it provided the definition of the relevant market as "in the United States for cryosurgical products to treat heart disorders," and that "CryoCath alleged anticompetitive conduct as discussed above." (Opp'n at 13, 17.) Defendant's contention contradicts assertions it made in Count III, and further evidences Defendant's failure to satisfy its obligation of defining a relevant market.

In Count III (Sherman Act Section 2), Defendant alleged that "relevant *markets* exist in the United States for cryosurgical products to treat heart disorders" without defining which particular market it was claiming as the relevant market. (D.I. 10 ¶ 37 (emphasis added).) Count III also alleges that Plaintiff CryoCor has "a monopoly on *certain uses* within the United States of cryosurgical products to treat heart disorders." (Br. at 20 (citing D.I. 10 ¶ 38 (emphasis added)).) Thus, based on Defendant's counterclaim, there are necessarily *other* "certain uses" in the "*markets* [that] exist in the United States for cryosurgical products to treat heart disorders" that Plaintiff CryoCor does not have a monopoly. (*Id.* ¶¶ 37, 38.)

But, now in its Answering Brief, Defendant asserts that its pleading defined the relevant market as "in the United States for cryosurgical products to treat heart disorders." (Opp'n at 13, 17.) It is illogical to assert that Plaintiff CryoCor's earlier alleged monopoly on only "certain uses" somehow now translates to an alleged monopoly over the entire relevant market, which

obviously would include other "certain uses" (like RF treatment) where Plaintiff CryoCor has or possesses no monopoly.

The basis for Defendant's apparent contradictory positions on this issue is simple – Defendant never defined the required market in its Counterclaims.   It would require pure speculation to envision a scenario where Plaintiff CryoCor could have a monopoly power "to control prices or exclude competition" in such broad market as now defined in Defendant's Brief, particularly in light of Defendant's prior "certain uses" and "markets" assertions.   *See, e.g., Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 380 (3d Cir. 2005) (internal quotations omitted), *cert. denied*, 547 U.S. 1020 (2006).

### b.    Defendant's Product Interchangeability Argument Is Unsupported By Fact

Defendant also failed to plead the required economic indicia of reasonable interchangeability for the relevant market. (*See, e.g.,* D.I. 12 at 19-20.)  In particular, Count III fails to provide any factual allegation regarding the interchangeability of products or cross-elasticity of demand relating to the products that supposedly are included in the alleged relevant market(s). *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) (quoting *Brown Shoe Co. v. U.S.,* 370 U.S. 294, 325 (1962),).  In attempting to defend its failure to account for the interchangeability of products, Defendant's Brief resorts to mischaracterization of matters outside its pleading.

More specifically, Defendant claims that Plaintiff CryoCor "publicly states that [the drug therapy and heat-based cardiac ablation] products are **_not_** interchangeable with cryosurgical products to treat heart disorders." (Opp'n at 14 (emphasis in original).)  Defendant wrongly represents the content of the document that it submitted as Exhibit B.  The document Defendant cited and attached as Exhibit B actually states the opposite: "CryoCor believes its Cardiac

14

Cryoablation System may provide clinicians with treatment success **_at least equivalent to_** that now achieved in treating atrial fibrillation with either drugs or RF ablation. . . ." (_Id._ Ex. B (emphasis added).)  It is inaccurate and disingenuous to represent CryoCor's statement that its products are "at least equivalent to" the drug or RF ablation based products as stating that there are no substitutes for cryosurgical products for treating heart disorders.

### c.    Defendant Failed To Sufficiently Allege Anticompetitive Conduct

Defendant also failed to assert sufficient factual allegations showing why Plaintiffs' institution of this lawsuit constitutes anticompetitive conduct. _See Twombly_, 127 S. Ct. at 1964–66, 1970, 1974 (requiring "enough facts to state a claim to relief that is plausible on its face.").  Conduct that merely harms competitors, and not the competitive process itself, is not anticompetitive. (Br. at 22 (citing _Parker v. Learn the Skills Corp._, 2008 U.S. Dist. LEXIS 1811, at *26 (D. Del. Jan. 10, 2008)).)

Count III of Defendant's counterclaims failed to provide any factual allegations that shed light on how Plaintiffs' institution of this lawsuit, based on their legal right to enforce their patent rights, harms the competition in the relevant market.  Instead, Defendant's allegations are focused on the perceived harm to itself only, which is legally insufficient to state a claim for anticompetitive conduct.  Defendant's Brief offers no explanations as to how to cure its failure to plead how the institution of this case harms the competitive process itself.  Instead, Defendant merely refers to the formulaic recitation of harm to consumers in ¶ 60 of its Amended Counterclaims.

Defendant's pleadings relating to its monopolization claim in Count III fail to properly allege grounds for Defendant's entitlement to the monopolization claim and, therefore, should be dismissed.

### 4.    Defendant's Count III Attempted Monopolization Claims Are Factually And Legally Flawed

Defendant's Answering Brief fails to show how its pleadings adequately pled the three requirements of an attempted monopolization claim under Sherman Act, Section 2.

With respect to the first requirement of predatory or anticompetitive conduct, Defendant does not attempt to show how its pleadings state that the "challenged action [the institution of this alleged sham litigation] has had an actual adverse effect on competition as a whole in the relevant market" (rather than harming Defendant individually). *George Haug Co., Inc. v. Rolls Royce Motor Cars, Inc.*, 148 F.3d 136, 139 (2d Cir. 1998). Defendant leans on its bald and conclusory allegation in ¶ 60 of the Amended Complaint, which alleges the unspecified harm to consumers. Such pleading cannot satisfy this first requirement, as it fails to state the actual harm to the "competition" as a whole in the relevant market.

With respect to the second element of specific intent, Defendant makes an illogical leap. It asserts that since the case law states that specific intent *can* be inferred from predatory or anticompetitive conduct, such case law therefore compels a finding that its pleadings satisfied the first two requirements of the attempted monopolization claim. (Opp'n at 17.) This argument should be rejected. Though specific intent *can* be inferred, it does not mean it *should* be inferred where no allegations are plead to justify the inference. As exemplified by *Advo, Inc. v. Philadelphia Newspapers*, the Third Circuit has not inferred any specific intent to monopolize, but instead has required the antitrust plaintiff establish that specific intent exists. 51 F.3d 1191, 1199 (3d Cir. 1995). And Defendant's pleadings contain no factual allegations that, if proven, would support any conclusion (by inference or otherwise) that Plaintiffs sought the enforcement of the two patents at issue with a specific intent to monopolize the relevant market.

Finally, with respect to the third element, Defendant argues that Plaintiffs admit that Defendant alleges Plaintiff CryoCor has a monopoly, and this admission alone or along with "the plaintiffs' own public and FDA clearance . . . provides *evidence* that the plaintiffs have a dangerous probability of achieving monopoly power." (Opp'n at 17-18.)  This argument lacks merit.  Defendant has made a conclusory allegation that Plaintiff CryoCor has a monopoly over certain uses.    Plaintiffs' statement is neither an admission nor evidence that Defendant sufficiently pled that Plaintiffs have a dangerous probability of achieving monopoly power.  Further, it is equally unclear how "the plaintiffs' own public and FDA clearance" could support Defendant's claim that Plaintiffs have a dangerous probability of achieving monopoly power by filing this lawsuit.    Defendant also failed to plead any facts – *e.g.*, market share or sales information – that could suggest that Plaintiffs have a dangerous probability of achieving monopoly power by filing this lawsuit. (*See* Br. at 25.)  Defendant's twisted argument that it properly pled the third element of an attempted monopolization claim is without support.

Accordingly, Defendant's antitrust claims should be dismissed.

### D.     Defendant's Arguments Against Bifurcation And Stay Should Be Rejected As Defendant Misstates Its Cited Case Law And The Necessary Additional Discovery

Defendant misstates the case law it cites, and does not appreciate the required additional discovery in antitrust proceeding.

First, there is no requirement that Plaintiffs "must show 'a clear case of hardship or inequity' before the Court can enter a stay order." (Opp'n at 19 (citing *Cognex Corp. v. Nat'l Instruments Corp.,* C. A. No. 00-442-JJF, 2001 U.S. Dist. LEXIS 25555, at *4 (D. Del. June 29, 2001).)  *Cognex* actually states that "*[w]here a stay will forestall the trial date agreed upon by the parties*, this Court has required the party requesting the stay to 'make a showing of 'a clear case of hardship or inequity' before the Court can enter a stay order.'"  *Id.* (emphasis added)

(citations omitted). The *Cognex* case involved a motion to stay that was filed three weeks before the close of discovery and about 6 months from the scheduled trial. *Id.* No such fact pattern is involved here.

Second, Defendant asserts that Plaintiffs' alleged failure to discuss the three factors that "must" be considered to enter a stay is fatal to Plaintiffs' alternative motion. (Opp'n at 19.) Defendant misstates the cited cases. Neither *Cognex* nor *Pegasus Dev. Corp.* states such a draconian rule. Instead, both cases state that the courts are generally guided by those factors. *Pegasus Dev. Corp. v. DIRECTV, Inc.*, C. A. No. 00-1020-GMS, 2003 U.S. Dist. LEXIS 8052, at *3-4 (D. Del. May 14, 2003); *Cognex,* 2001 U.S. Dist. LEXIS 25555, at *3.

Third, Defendant asserts that "[a]dditional antitrust discovery should not be significant – that is surely why the plaintiffs did not give examples." (Opp'n at 21.) This is untrue. Examples of the antitrust related discovery which would not be necessary in patent cases are numerous in number and are found in Plaintiffs' Opening Brief at 30. Defendant's insistence that antitrust discovery would only slightly go beyond that which will be needed for standard patent damages further illustrates Defendant's inability to appreciate the proof necessary to support the antitrust claims it seeks.

At a minimum, if the antitrust claims are not dismissed, Plaintiffs request that the Court bifurcate and stay these counterclaims, and the related discovery, until after the patent infringement claims are finally resolved.

## III.    CONCLUSION

For all of the foregoing reasons, Plaintiffs' respectfully request that Count III (Patent Misuse and Violation of Sherman Act), Count IV (Sham Litigation), and Count XI (Delaware Unfair Competition) of Defendant's Counterclaims be dismissed under Rule 12(b)(6) for failing to state a claim upon which relief can be granted, or, in the alternative, that these counts be bifurcated and stayed.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Leland G. Hansen
Wil Rao
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
Tel: (312) 775-8000
*Attorneys For AMS Research Corp.*

Howard N. Wisnia
James P. Conley
BAKER & MCKENZIE
12544 High Bluff Drive, Third Floor
San Diego, California 92130-3051
Tel: (858) 523-6200
*Attorneys For CryoCor, Inc.*

Dated:  May 1, 2008
862775 / 32647

By:  */s/ David E. Moore*
　　　Richard L. Horwitz (#2246)
　　　David E. Moore (#3983)
　　　1313 N. Market Street
　　　Hercules Plaza, 6th Floor
　　　Wilmington, DE 19801
　　　Tel:  (302) 984-6000
　　　rhorwitz@potteranderson.com
　　　dmoore@potteranderson.com

*Attorneys For Plaintiffs CryoCor, Inc. and
AMS Research Corporation*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## **CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on May 1, 2008, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

John G. Day
Lauren E. Maguire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

By:  */s/ David E. Moore*
      Richard L. Horwitz
      David E. Moore
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, Delaware 19899-0951
      (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

847926 / 32647