# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CRYOCOR, INC. and AMS RESEARCH CORPORATION, )
                Plaintiffs, )
      v. )
CRYOCATH TECHNOLOGIES, INC. )
                Defendant. )

Civil Action No. 08-031-GMS

CRYOCATH TECHNOLOGIES INC., )
                Counterclaimant, )
      v. )
CRYOCOR, INC. and AMS RESEARCH CORPORATION, )
                Counterdefendants. )

## MOTION TO STAY CASE UNDER 28 U.S.C. § 1659

Defendant and counterclaimant CryoCath Technologies Inc. (CryoCath) moves under 28 U.S.C. § 1659 for an Order staying this action. CryoCath is named as Respondent in Investigation No. 337 – TA – 642 brought by plaintiffs and counterdefendants under 19 U.S.C. § 1337 before the United States International Trade Commission (ITC) titled *In the Matter of Certain Catheters, Consoles and other Apparatus for Cryosurgery, and Components thereof.*

## FACTUAL BACKGROUND

On January 15, 2008, CyroCor, Inc. and AMS Research Corporation ("plaintiffs and counterdefendants") filed a Complaint in this Court. In the Complaint, the plaintiffs and counterdefendants allege CryoCath infringes claims of U.S. Patent Nos. 6,572,610, 6,471,694

and Reissue Patent No. 40,049 (the "asserted patents"). Docket No. (DI) 1. They allege CryoCath's CryoConsole and CryoCath's Freezor®, Freezor Xtra®, and Freezor MAX® catheters infringe the asserted patents' claims and seek to permanently enjoin CryoCath's selling and offering to sell its accused products in the United States. *Id.*

On February 28, 2008, CryoCor filed a Complaint with the ITC. Ex. A. The ITC Complaint makes the same infringement allegations for the same asserted patents and the same accused products. *Id.* In the ITC Complaint, the plaintiffs seek a limited exclusion order barring from entry into the United States the accused products. That relief would have the same effect as the injunction sought in this case.

On April 2, 2008, the ITC instituted Investigation No. 337 – TA – 642 and published notice of the investigation in the Federal Register. Ex. B.

## ARGUMENT AND AUTHORITY

A stay of this case protects CryoCath's interests and preserves judicial and party resources. Title 28 U.S.C. § 1659 provides:

> (a) Stay. In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930, at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission, but only if such request is made within -
>
> > (1) 30 days after the party is named as a respondent in the Proceeding before the Commission, or
> >
> > (2) 30 days after the district court action is filed,
>
> whichever is later.

The plaintiffs seek relief in the ITC. That relief concerns the same parties, patents, products and allegations in this action. Compare DI 1 with Ex. A. Staying this action in

accordance with 28 U.S.C. § 1659 will prevent unnecessary, parallel use of party and judicial resources to litigate identical issues and is required by statute when the ITC Respondent requests it.

As required by 28 U.S.C. § 1659, CryoCath timely makes this Motion.  The official date the ITC instituted Investigation No. 337-TA-642 2008 naming CryoCath Respondent was April 2, 2008.  *See* 19 C.F.R. § 210.10(b).  Thirty (30) days have not elapsed since the Investigation was instituted naming CryoCath as Respondent.

## CONCLUSION

For the foregoing reasons, CryoCath Technologies Inc. respectfully requests that the Court stay this matter as directed by 28 U.S.C. § 1659.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888

*Attorneys for Defendant/Counterclaimant*
*CryoCath Technologies, Inc.*

*Of Counsel:*

Jason R. Buratti
Jeffery L. Kamenetsky
Christopher & Weisberg, P.A.
200 East Las Olas Boulevard
Suite 2040
Fort Lauderdale, FL 33301
Telephone:  (954) 828-1488
Facsimile:  (954) 828-9122

Dated: May 2, 2008

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1.1

I hereby certify that CryoCath has attempted to confer with counsel for the plaintiffs but plaintiffs have not been available to discuss this motion.

*/s/ Lauren E. Maguire*
_____
Lauren E. Maguire

# EXHIBIT A



**mcandrews**
McANDREWS HELD & MALLOY LTD

500 WEST MADISON STREET 34TH FLOOR CHICAGO ILLINOIS 60661
(T) 312 775 8000  (F) 312 775 8100  www.mcandrews-ip.com

DOCKET
NUMBER

2604

Office of the
Secretary
Int'l Trade Commission

LELAND G. HANSEN
(T) 312 775 8013
lhansen@mcandrews-ip.com

CBI : 08-170

February 28, 2008

**Via Hand Delivery**

The Honorable Marilyn R. Abbott
Secretary U.S. International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436

Re:    Certain Catheter, Consoles And Other Apparatus For CryoSurgery, And
        Components Thereof

Dear Secretary Abbott:

Enclosed for filing on behalf of CryoCor, Inc. ("CryoCor") and AMS Research Corporation ("AMS Research") are the following documents in support of their request that the Commission commence an investigation pursuant to § 337 of the Tariff Act of 1930, as amended.

Pursuant to Commission Rules of Practice and Procedure (the "Rules") 201.6(b) and 210.5(d), a request for a confidential treatment of:

- Confidential Complaint Exhibit 7 (submitted as Appendix A);

- Confidential Complaint Exhibit 30;

- Confidential Sub-exhibit F to Complaint Exhibit 33; and

- Confidential Sub-exhibit F to Complaint Exhibit 34

is concurrently transmitted with this filing.

In addition, pursuant to the applicable Rules, CryoCor and AMS Research submit the following:



**mcandrews**
McANDREWS HELD & MALLOY LTD

The Honorable Marilyn R. Abbott
February 28, 2008
Page 2

1.  An original and twelve (12) copies of the verified Complaint (with the original and one copy unbound, without tabs) (Rule 210.8(a)).

2.  An original and six (6) copies of the Non-Confidential Exhibits to the Complaint (with the original and one copy unbound, without tabs) (Rule 210.8(a)).

3.  An original and six (6) copies of the Confidential Exhibits to the Complaint (with the original and one copy unbound, without tabs) (Rules 201.6(c), 210.4(f)(3)(i), and 210.8(a)).

4.  One additional copy of the Complaint and accompanying exhibits, both confidential and non-confidential, for service upon the proposed Respondent (Rule 210.8(a) and 210.11(a)(1)).

5.  One additional copy of the verified Complaint and accompanying non-confidential exhibits for service upon the Embassy of Canada (Rule 210.8(a), and 210.11(a)(1)).

6.  A certified copy of U.S. Patent No. 6,471,694 ("the 694 Patent") included as Exhibit 3 to the Complaint (Rule 210.12(a)(9)(i)).

7.  A certified copy of the chain of title documents for the 694 Patent as Exhibits 8, 15 and 16 (Rule 210.12(a)(9)(ii)).

8.  A certified copy of U.S. Patent No. 6,572,610 ("the 610 Patent") included as Exhibit 1 to the Complaint (Rule 210.12(a)(9)(i)).

9.  A certified copy of the chain of title documents for the 610 Patent as Exhibits 8, 15 and 16 (Rule 210.12(a)(9)(ii)).

10. A certified copy of U.S. Patent No. RE 40,049 ("the RE 049 Patent") included as Exhibit 2 to the Complaint (Rule 210.12(a)(9)(i)).

11. A certified copy of the chain of title documents for the RE 049 Patent as Exhibits 8, 15 and 16 (Rule 210.12(a)(9)(ii)).



*mcandrews*
McANDREWS HELD & MALLOY LTD

The Honorable Marilyn R. Abbott
February 28, 2008
Page 3

12. Three (3) copies of the 08/30/2000 Confidential License Agreement between Cryogen, Inc. and CryoCor, Inc. relating to the 610 Patent, 694 Patent and the RE 049 Patent [Exhibit 7] (Rule 210.12(c)(1)).

13. Three (3) copies of the Public, redacted 06/28/2007 Development and License Agreement among CryoCor, Inc., Boston Scientific Corporation and Boston Scientific Scimed, Inc., Inc. (Exhibit 17 & Appendix B) (Rule 210.12(c)(1)).

14. A certified copy, three (3) additional copies of the prosecution history for the 610 Patent as Appendix E (Rule 210.12(c)(2)).

15. A non-certified copy, three (3) additional copies of the prosecution history for the 694 Patent as Appendix C (Rule 210.12(c)(2)). A certified copy is on order from the U.S. Patent Office and will be provided when they are received from the U.S. Patent Office.

16. A certified copy and three (3) additional copies of the prosecution history for the RE 049 Patent as Appendix G (Rule 210.12(c)(2)). Four (4) copies of each patent and technical reference document mentioned in the prosecution history of the 610 Patent as Appendix F (Rule 210.12(c)(3).

17. Four (4) copies of each patent and technical reference document mentioned in the prosecution history of the 694 Patent as Appendix D (Rule 210.12(c)(3)).

18. Four (4) copies of each patent and technical reference document mentioned in the prosecution history of the RE 049 Patent as Appendix H (Rule 210.12(c)(3)).

19. A letter containing the above-mentioned request for confidential treatment of Confidential Exhibits and the certification pursuant to Commission Rules 201.6(b) and 210.5(d) concerning the confidentiality of such documents.

20. One domestic CryoCor catheter. It is not practicable at this time to submit the CryoCor console that is also the subject of this



**mcandrews**
McANDREWS HELD & MALLOY LTD

The Honorable Marilyn R. Abbott
February 28, 2008
Page 4

complaint; however, photographs and/or other visual representations are included with the Complaint (Rule 210.12(b)).

21.  One imported CryoCath catheter. It is not practicable at this time to submit the CryoCath console that is also the subject of this complaint; however, photographs and/or other visual representations are included with the Complaint (Rule 210.12(b)).

Please do not hesitate to contact me at 312-775-8013 if there are any questions pertaining to this submission. If I am not available, you may contact Wil Rao at 312-775-8190. Thank you for your attention to this matter.

Respectfully submitted,

Leland G. Hansen

Enclosures

cc:  Howard N. Wisnia, Esq. (w/ enclosures via Federal Express)



**_mcandrews_**
McANDREWS HELD & MALLOY LTD

500 WEST MADISON STREET 34TH FLOOR  CHICAGO ILLINOIS 60661
(T) 312 775 8000    (F) 312 775 8100    www.mcandrews-ip.com

WIL L. RAO
(T) 312 775 8190
wrao@mcandrews-ip.com

February 28, 2008

**Via Hand Delivery**

The Honorable Marilyn R. Abbott
Secretary U.S. International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436

Re:   Certain Catheter, Consoles And Other Apparatus For CryoSurgery, And
      Components Thereof

Dear Secretary Abbott:

    I am counsel for Complainant AMS Research Corporation ("AMS Research") and
write on behalf of both Complainants, AMS Research and CryoCor, Inc. ("CyroCor"). In
accordance with Commission Rule 201.6 and 210.5, Complainants request confidential
business treatment for the accompanying:

- **Appendix A**, which contains Confidential Complaint Exhibit 7, a confidential
  license agreement between CryoCor, Inc. and Cryogen, Inc. that is being
  submitted pursuant to Rule 210.12(c)(1) and contains information that is not
  publicly available;

- **Confidential Complaint Exhibit 30**, a confidential declaration of Gregory J.
  Tibbitts, CryoCor's CFO, which contains proprietary business information relating
  to CryoCor's investment in equipment, facilities and labor involved in the domestic
  product manufactured by CryoCor in the United States;

- **Confidential Sub-exhibit F to Complaint Exhibit 33**, a confidential engineering
  drawing that is not publicly available; and

- **Confidential Sub-exhibit F to Complaint Exhibit 34**, a portion of a confidential
  system protocol that is not publicly available.

The above-identified documents have been concurrently transmitted with the Complaint
as an original and six (6) copies (with the original and one copy unbound, without tabs),
pursuant to Rules 201.6(c), 210.4(f)(3)(i), and 210.8(a).



**mcandrews**
McANDREWS HELD & MALLOY LTD

The Honorable Marilyn R. Abbott
February 28, 2008
Page 2

The information described above qualifies as confidential business information pursuant to Rule 201.6(a) in that:

1.   it is not available to the public; and

2.   unauthorized disclosure of such information could cause substantial harm to the competitive position of the Complainants.

Please do not hesitate to contact me at 312-775-8190 if there are any questions pertaining to this submission. If I am not available, you may contact Leland Hansen at 312-775-8013. Thank you for your attention to this matter.

Respectfully submitted,

Wil Rao
Counsel for AMS Research Corp.

On behalf of all Complainants

SUBSCRIBED AND SWORN BEFORE ME THIS 28th day of February 2008

Notary Public

OFFICIAL SEAL
CARMEN CAMARENA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/02/10

cc:    Howard N. Wisnia, Esq. (w/ enclosures via Federal Express)

## UNITED STATES INTERNATIONAL TRADE COMMISSION
### Washington, D.C. 20436

IN THE MATTER OF

**CERTAIN CATHETERS, CONSOLES
AND OTHER APPARATUS FOR
CRYOSURGERY, AND COMPONENTS
THEREOF**

Inv. No. 337-TA-

## COMPLAINT UNDER SECTION 337 OF
## THE TARIFF ACT OF 1930, AS AMENDED

<u>Complainants</u>

**CryoCor, Inc.**
9717 Pacific Heights Boulevard
San Diego, California 92121
(858) 909-2200
(858) 909-2300 - Facsimile

**AMS Research Corporation**
10700 Bren Road West
Minnetonka, Minnesota 55343
(952) 930-6300
(952) 930-6373 - Facsimile

<u>Counsel for Complainants</u>

Leland G. Hansen
Wil L. Rao
**MCANDREWS, HELD & MALLOY, LTD.**
500 West Madison Street
Chicago, Illinois 60661
(312) 775-8000
(312) 775-8100 - Facsimile
*Email: lhansen@mcandrews-ip.com*
*Email: wrao@mcandrews-ip.com*
Attorneys for AMS Research Corp.

Kevin O'Brien
Kevin Sullivan
**BAKER & MCKENZIE LLP**
815 Connecticut Avenue, NW
Washington, DC 20006-4078
(202) 452-7000
(202) 452-7074 - facsimile
*Email: kevin.m.o'brien@bakernet.com*

<u>Proposed Respondent</u>

**CryoCath Technologies, Inc.**
16771 Chemin Ste-Marie
Kirkland, Quebec, H9H 5H3, Canada
(877) 694-1212
(514) 694-6279 - Facsimile

Howard N. Wisnia
James P. Conley
**BAKER & McKENZIE LLP**
12544 High Bluff Drive, Third Floor
San Diego, California 92130-3051
(858) 523-6200
(858) 259-8290 – facsimile
*Email: howard.n.wisnia@bakernet.com*

**Attorneys for CryoCor, Inc.**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................ 1

II.     THE PARTIES ..................................................................................... 2

        A.      Complainants CryoCor and AMS Research ............................................. 2

        B.      Respondent CryoCath ...................................................................... 4

III.    THE PRODUCTS AT ISSUE ............................................................... 4

        A.      Complainant CryoCor's System and Components Thereof...................... 4

        B.      Respondent CryoCath's Products and Components Thereof.................... 7

IV.     THE ASSERTED PATENTS ............................................................... 8

        A.      Identification, Ownership, and Enforcement Rights of the Asserted Patents......... 8

        B.      The 694 Patent .............................................................................. 10

        C.      The 610 Patent .............................................................................. 12

        D.      The RE 049 Patent ......................................................................... 13

        E.      Foreign Counterparts of the Respective Asserted Patents ..................... 15

V.      UNFAIR ACTS – CRYOCATH IS INFRINGING THE ASSERTED PATENTS ......... 15

VI.     IMPORTATION AND SALE .............................................................. 18

VII.    LICENSES ........................................................................................ 21

VIII.   DOMESTIC INDUSTRY ................................................................... 22

IX.     RELATED LITIGATION .................................................................... 24

X.      REQUESTED RELIEF ....................................................................... 25

i

## EXHIBITS

| | |
|---|---|
| Exhibit 1 | U.S. Patent No. 6,572,610 (certified) ("610 Patent") |
| Exhibit 2 | U.S. Patent Reissue No. RE 40,049 (certified) ("RE 049 Patent") |
| Exhibit 3 | U.S. Patent No. 6,471,694 (certified) ("694 Patent") |
| Exhibit 4 | CryoCor, Inc.'s Third Quarter 2007 10-Q |
| Exhibit 5 | American Medical Systems Holdings, Inc.'s 2006 Annual Report |
| Exhibit 6 | American Medical Systems Holdings, Inc.'s Third Quarter 2003 10-Q |
| *Confidential* Exhibit 7 | Confidential 08/31/2000 License Agreement between Cryogen, Inc. and CryoCor, Inc. ("08/31/2000 License Agreement") (submitted separately and concurrently as Appendix A pursuant to Commission Rules 201.6(b) and 210.5(d)) |
| Exhibit 8 | Assignments for the 694 Patent, 610 Patent and RE 049 Patent (issued originally as U.S. Patent No. 6,237,355) from American Medical Systems Gynecology, Inc. to AMS Research Corporation (certified) |
| Exhibit 9 | CryoCath Technologies, Inc.'s Third Quarter 2007 Report |
| Exhibit 10 | CryoCor Inc.'s Summary of Safety and Effectiveness to the U.S. Food and Drug Administration, P050024 – CryoCor Cryoablation System ("CryoCor's Summary of Safety and Effectiveness") |
| Exhibit 11 | 01/30/2008 Webpage printout from CryoCor Inc.'s website at http://www.cryocor.com/Corpprofile/Procedure.Htm and http://www.cryocor.com/Clinical/Atrial_Flutter.Htm |
| Exhibit 12 | CryoCath Technologies, Inc.'s Summary of Safety and Effectiveness to the U.S. Food and Drug Administration, P020045 – CryoCath Freezor Cardiac Cryoablation Catheter and CTT.2 CryoConsole System ("CryoCath's Summary of Safety and Effectiveness") |
| Exhibit 13 | CryoCath Technologies, Inc.'s "The Freezor Family" Product Illustration (with U.S. Flag) |
| Exhibit 14 | 01/30/2008 Webpage printout from CryoCath Technologies, Inc.'s website at www.Cryocath.Com/En/4.Products/40.1.4.Ep.Usa.Console.Asp |

| | |
|---|---|
| Exhibit 15 | Assignments for the 694 Patent, 610 Patent and RE 049 Patent (issued originally as U.S. Patent No. 6,237,355) from the respective inventor(s) to Cryogen, Inc. (certified) |
| Exhibit 16 | Assignments for the 694 Patent, 610 Patent and RE 049 Patent (issued originally as U.S. Patent No. 6,237,355) from Cryogen, Inc. to American Medical Systems Gynecology, Inc. (certified) |
| Exhibit 17 | Public, redacted 06/28/2007 Development and License Agreement among CryoCor, Inc., Boston Scientific Corporation and Boston Scientific Scimed, Inc. ("06/28/2007 License Agreement") (submitted separately and concurrently as Appendix B) |
| Exhibit 18 | A list of each foreign patent, each foreign patent application (not already issued as a patent) and each foreign patent application that has been designated corresponding to the 694 Patent, with an indication of the prosecution status of each such patent application |
| Exhibit 19 | A list of each foreign patent, each foreign patent application (not already issued as a patent) and each foreign patent application that has been designated corresponding to the 610 Patent, with an indication of the prosecution status of each such patent application |
| Exhibit 20 | A list of each foreign patent, each foreign patent application (not already issued as a patent) and each foreign patent application that has been designated corresponding to the RE 049 Patent (issued originally as U.S. Patent No. 6,237,355), with an indication of the prosecution status of each such patent application |
| Exhibit 21 | 12/06/2007 Webpage printout from the U.S. Food and Drug Administration website for 7F Freezor Cardiac Cryoablation Catheter and CCT.2 CryoConsole System – P-20045 at http://www.Fda.Gov/Cdrh/PDF2/P020045.Html |
| Exhibit 22 | 01/31/2008 Webpage printout of CryoCath Technologies, Inc.'s website "Product U.S.A., Electrophysiology, Ordering Information [in the USA]" at http://www.Cryocath.Com/En/4.Products/40.1.5.ep.USA.ordering.info.asp |
| Exhibit 23 | 01/31/2008 Website printout of "Akron Children's Hospital Replay of Pediatric Cardiac Cryoablation" Procedure at http://www.Or-Live.Com/akronchildrens/1562/ |
| Exhibit 24 | 01/31/2008 Website printout of "Virtual Hands-On: CryoCath Technologies Cryoablation" at http://www.hrsonline.Org/Education/Selfstudy/VHO/Cryocath_Technologies_Cryoablation.cfm |

| | |
|---|---|
| Exhibit 25 | Claim charts for infringement of the 694 Patent by CryoCath Technologies, Inc. with supporting Exhibits A through J |
| Exhibit 26 | Claim charts for infringement of the 610 Patent by CryoCath Technologies, Inc. with supporting Exhibits A through E |
| Exhibit 27 | Claim charts for infringement of the RE 049 Patent by CryoCath Technologies, Inc. with supporting Exhibits A through K |
| Exhibit 28 | CryoCath Technologies, Inc.'s Operator's Manual Freezor™ Cardiac Cryoablation Catheter (7F) and CCT.2 CryoConsole |
| Exhibit 29 | CryoCath Technologies, Inc.'s notes for videos located in Electrophysiology Knowledge Center |
| *Confidential* Exhibit 30 | Confidential Declaration of Gregory J. Tibbitts |
| Exhibit 31 | 1/31/2008 Webpage printout from the U.S. Food and Drug Administration website, CryoCath Technologies, Inc.'s 510k Premarket Notification Database Summary |
| Exhibit 32 | CryoCath Technologies, Inc.'s 2007 Progress Report |
| Exhibit 33 | Claim charts for the 694 Patent and products of CryoCor, Inc. with Exhibits A through G |
| Exhibit 34 | Claim charts for the 610 Patent and products of CryoCor, Inc. with Exhibits A through G |
| Exhibit 35 | Claim charts for the RE 049 Patent and products of CryoCor, Inc. with Exhibits A through G |
| Exhibit 36 | 08/01/2007 U.S. Department of Health and Human Services letter to CryoCor, Inc., P050024 – CryoCor Cryoablation System |
| Exhibit 37 | 02/21/2008 Docket Report, *CryoCor Inc. et al. v. CryoCath Technologies, Inc.*, Case No. 08-031-GMS (D. Del.) |
| Exhibit 38 | 02/21/2008 Docket Report, *CryoCath Technologies, Inc. v. CryoCor, Inc.*, Case No. 07-631-GMS (D. Del.) |
| *Physical* Exhibit 39 | Imported catheter of CryoCath Technologies, Inc. |
| Physical Exhibit 40 | Domestic catheter of CryoCor, Inc. |

Exhibit 41                    02/27/08 Webpage printout of Cryocath Technologies Inc.'s
                              website of how to "Contact a Medical Advisor" at
                              http://www.cryocath.com/en/2.patients/2.8medical.advisor.asp

## APPENDICES
### (Separately and concurrently submitted with the complaint)

Appendix A         Confidential Exhibit 7, 8/31/2000 License Agreement between
                   Cryogen, Inc. and CryoCor, Inc. in triplicate ("8/31/2000 License
                   Agreement")

Appendix B         Public, redacted 06/28/2007 Development and License Agreement
                   among CryoCor, Inc., Boston Scientific Corporation and Boston
                   Scientific Scimed, Inc. in triplicate ("06/28/2007 License
                   Agreement")

Appendix C         Prosecution History for the 694 Patent (certified not available yet)
                   ("694 Prosecution History") with three additional copies

Appendix D         Four copies of each patent and technical reference mentioned in
                   the 694 Prosecution History

Appendix E         Certified Prosecution History for the 610 Patent ("610 Prosecution
                   History") with three additional copies

Appendix F         Four copies of each patent and technical reference mentioned in
                   the 610 Prosecution History

Appendix G         Certified Prosecution History for the RE 049 Patent ("RE 049
                   Patent Prosecution History") with three additional copies

Appendix H         Four copies of each patent and technical reference mentioned in
                   the RE 049 Patent Prosecution History

## I.    INTRODUCTION

1.1.    CryoCor, Inc. ("CryoCor") and AMS Research Corporation ("AMS Research") (collectively "Complainants") respectfully request that the U.S. International Trade Commission ("the ITC") commence an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended. See 19 U.S.C. § 1337 ("Section 337"). Complainants request that the ITC remedy the unlawful importation into the United States, the sale for importation, or the sale within the United States after importation by the owner, importer, or consignee, of certain catheters, consoles, and other apparatus for cryosurgery, and components thereof, that infringe one or more of Complainants' patents.

1.2.    On information and belief, the proposed respondent, CryoCath Technologies, Inc. ("CryoCath"), is a company headquartered in Canada that has engaged in unfair acts in violation of Section 337 through the unlicensed importation, sale for importation, or sale after importation into the United States of certain catheters, consoles, and other apparatus for cryosurgery, which include at least CryoCath's cryoconsoles and CryoCath's cryoablation catheters such as Freezor, Freezor Xtra, and Freezor MAX catheters (collectively the "CryoCath Products").

1.3.    CryoCath's CryoCath Products and their intended use infringe one or more claims of United States Patent Nos. 6,471,694 (the "694 Patent"), 6,572,610 (the "610 Patent") and RE 40,049 (the "RE 049 Patent") (collectively the "Asserted Patents"), which are owned by AMS Research and exclusively licensed to CryoCor in certain fields of use. Pursuant to Commission Rule 210.12(a)(9)(i), certified copies of the 610 Patent, the RE 049 Patent, and the 694 Patent are attached to this Complaint as Exhibits 1, 2 and 3, respectively.

1.4.    As required by Section 337(a)(2) and (3), a domestic industry for the 694 Patent, the 610 Patent, and the RE 049 Patent, and for products and technology protected by these patents, exists and/or is in the process of being established in the United States.

1

1.5.    Complainants seek an order pursuant to Section 337(d) excluding from entry into the United States all products imported by CryoCath that infringe the Asserted Patents. Complainants further seek a cease and desist order pursuant to Section 337(f) directing CryoCath and those acting in conjunction with CryoCath to cease the importation, promotion, marketing, advertising, demonstration, and warehousing of inventory for distribution, sale, and use of such products within the United States.

## II.    THE PARTIES

### A.    Complainants CryoCor and AMS Research

2.1.    Complainant CryoCor is a medical technology company based in the United States. It is incorporated in the state of Delaware. CryoCor is headquartered at 9717 Pacific Heights Boulevard, San Diego, California 92121. CryoCor's most recent quarterly report accompanies this Complaint. (See Ex. 4, CryoCor Inc.'s Third Quarter 2007 10-Q, at 6.)

2.2.    CryoCor is an industry leader in developing and manufacturing cryogenic technology to treat certain cardiac arrhythmias by creating lesions using cryoenergy, or extreme cold. CryoCor's core product line is called The CryoCor™ Cardiac Cryoablation System ("the CryoCor Cryoablation System") and comprises a cryoablation catheter and a refrigeration console. In August 2007, CryoCor received FDA approval for the treatment of AFL with the CryoCor Cardiac Cryoablation System.

2.3.    Complainant AMS Research is a Delaware corporation, and has its principal place of business at 10700 Bren Road West, Minnetonka, Minnesota 55343. AMS Research Corporation is a wholly owned subsidiary of American Medical Systems, Inc., which is a wholly-owned subsidiary of American Medical Systems Holdings, Inc. ("AMS Holdings").

2.4.    AMS Holdings is headquartered in the United States, is a Delaware corporation, and has its principal place of business at 10700 Bren Road West, Minnetonka, Minnesota 55343.

2

AMS Holdings' most recent annual report accompanies this Complaint. (Exhibit 5, American Medical Systems Holdings, Inc.'s 2006 Annual Report.) AMS Holdings is the world's leading independent company focused on developing, manufacturing and marketing medical devices that restore male and female pelvic health. (Id.)

2.5.    On or about December 30, 2002, AMS Holdings acquired Cryogen, Inc. ("Cryogen") by merger. (Ex. 6, American Medical Systems Holdings, Inc.'s Third Quarter 2003 10-Q, at 8.) At the time, Cryogen was a corporation based in the United States and headquartered in San Diego California, and had entered into an exclusive, worldwide license agreement with CryoCor in a certain field of use involving patents and applications, including those that issued as the 694 Patent, the 610 Patent, and U.S. Patent No. 6,237,355, which later reissued as the RE 049 Patent. (Ex. 7, Confidential 08/30/2000 License Agreement.) Pursuant to 19 C.F.R. § 210.12(c), three copies of this confidential license agreement accompany this complaint. (Id.)

2.6.    In conjunction with the merger, AMS Holdings paid $36.2 million plus $4.7 million of acquisition-related costs. (Ex. 6, American Medical Systems Holdings, Inc.'s Third Quarter 2003 10-Q at 6.) In addition to the initial consideration, AMS Holdings also agreed to make an additional payment of up to $110 million, depending on product sales. (Id.) A principal purpose of the Cryogen acquisition by AMS Holdings was to "gain access to CryoGen's products and technology." (Id.) AMS Research now has all right, title and interest in the Asserted Patents, and stands as the licensor of the exclusive, worldwide field of use license to CryoCor. (See Ex. 8, Assignments for the 694 Patent, 610 Patent and RE 049 Patent from American Medical Systems Gynecology, Inc. to AMS Research Corporation; see also Exhibits 15 and 16.)

3

**B.    Respondent CryoCath**

2.7.    On information and belief, Respondent CryoCath is a corporation based in Canada. CryoCath is a corporation organized and existing under the laws of the province of Quebec, Canada and has a principal place of business at 16771 Chemin Ste-Marie, Kirkland, Quebec, H9H 5H3, Canada. One of CryoCath's most recent quarterly reports accompanies this Complaint. (See Ex. 9, CryoCath Technologies, Inc.'s Third Quarter 2007 Report, at 47.)

2.8.    CryoCath is a medical technology company and operates in a single business segment, namely the development, manufacture and sale of cryoablation therapeutic technologies, including consoles and disposables (e.g., catheters and probes). CryoCath, among other things, uses, sells, offers for sale, imports and/or has imported into the United States cryosurgical products to treat cardiac arrhythmias. (Id. at 5 ("Today, the majority of our revenue is derived in the United States, with a significant portion coming from recurring, single use product sales." (emphasis added).)

**III.    THE PRODUCTS AT ISSUE**

**A.    Complainant CryoCor's System and Components Thereof**

3.1.    The products at issue generally pertain to treatment of cardiac arrhythmias. Cardiac arrhythmias are dysfunctions in the electrical activity that normally controls and maintains the highly coordinated contractions of the heart. Arrhythmias cause the heart to pump blood less efficiently, cause potentially debilitating symptoms, and can result in life threatening events such as stroke. CryoCor's development efforts have focused on a system for treating the two arrhythmias that are most difficult to treat: atrial fibrillation, or AF, and right atrial flutter, or AFL. AF is the most prevalent arrhythmia. AFL is the second most prevalent arrhythmia and can lead to, and often coexists with, AF.

3.2.    Until recently, the standard approach for the treatment of atrial fibrillation has been anti-arrhythmic drug therapy, which often is ineffective and may cause serious, and

4

sometimes life-threatening, complications. (Ex. 10, CryoCor's Summary of Safety and Effectiveness, at 3 of 15.) Other approaches include surgery, pacing therapies such as implantable pacemakers or cardioverter-defribrillators (ICDs), and ablation of the arrhythmogenic cardiac tissue using radiofrequency catheters. (Id.) Because of the limitations and complications of these approaches, there has been substantial demand for a safe and effective catheter ablation technology for the treatment and cure of atrial fibrillation and other complex arrhythmias.

    3.3.    The CryoCor Cryoablation System addresses this demand. Using the CryoCor Cryoablation System, a physician can permanently interrupt the electrical signals that cause an abnormal heart rate or rhythm. (Id. at 1.)

    3.4.    The CryoCor Cryoablation System provides a novel technology for localizing and treating cardiac arrhythmias. CryoCor's proprietary system comprises the CryoCor Cryoablation Console (which features an articulating arm housing a pre-cooler), as depicted below on the right, and the CryoCor CryoBlator Catheter (a sterile, disposable, single-use percutaneous cryoablation catheter), as depicted below on the left. (See id.) The system is designed to be operated as a unit. (Id.)



3.5.    As an example, the CryoCor Cryoablation System can be operated as follows. First, the CryoCor sheath dilator is inserted at the groin and the catheter is advanced into the sheath, through the femoral vein, and into the right atrium, as illustrated below in Image A. The catheter is then articulated within the heart to the location where the physician wishes to make an ablation (Image B). In the example below, the catheter is guided to edge of the tricuspid valve and a cryoablation is performed (Image C). Additional ablations are then performed as necessary; in this example, ablations sufficient to create a lesion from the tricuspid valve to the ostium of the inferior vena cava are performed (Image D). (Ex. 11, 01/30/2008 Webpage printout From CryoCor, Inc.'s Website at http://www.cryocor.com/corpprofile/procedure.htm at http://www.cryocor.com/clinical/atrial_flutter.htm.)



3.6.    To provide extreme cold at the tip of the cryoablation catheter, the console delivers a primary refrigerant in an open loop. The primary refrigerant is liquefied by a closed loop pre-cooling refrigeration stage. (Ex. 10, CryoCor's Summary of Safety and Effectiveness, at 4.) Pre-cooling occurs in a heat exchanger located near the catheter/console interconnect, at

6

the end of the console's articulating arm. (Id.) The primary refrigerant reaches its lowest temperature via the phase change of the fluid (liquid to gas) after it exits a capillary tube at the distal tip of the cryoablation catheter. (Id.) The primary refrigerant (as a gas) is then returned from the catheter through the console to an outlet. (Id.)

3.7.    Accompanying this complaint as Physical Exhibit 40 is a CryoCor catheter, as well as various photographs of the Physical Exhibit 40 at Exhibit 40.

**B.    Respondent CryoCath's Products and Components Thereof**

3.8.    Respondent CryoCath's Products include the Freezor Cardiac Cryoablation Catheter (the "Freezor Catheter"), umbilicals and accessories, and the CCT.2 CryoConsole (the "CryoConsole"). (Ex. 12, CryoCath's Summary of Safety and Effectiveness to the U.S. Food and Drug Administration, P020045 – CryoCath Freezor Cardiac Cryoablation Catheter and CTT.2 CryoConsole System, at 2 of 15; Ex. 13, CryoCath Technologies, Inc.'s "The Freezor Family" Product Illustration (with U.S. Flag); Ex. 14, 01/30/2008 Webpage printout of CryoCath's Website, http://www.cryocath.com/en/4.products/40.1.4.ep.usa.console.asp.) The CryoCath Products at issue in this investigation are imported into the United States and offered for sale, sold, and used in the United States.

3.9.    Accompanying this complaint as Physical Exhibit 39 is a CryoCath Freezor Cardiac Cryoablation Catheter acquired in the United States, as well as various photographs of the Physical Exhibit 40 at Exhibit 40.

3.10.    A Freezor Catheter and CryoConsole are depicted below. Cryogenic temperatures are produced at the distal tip of the catheter. (Ex. 12, CryoCath's Summary of Safety and Effectiveness to the U.S. Food and Drug Administration, P020045 – CryoCath Freezor Cardiac Cryoablation Catheter and CTT.2 CryoConsole System, at 2 of 15.) The distal

tip is placed on the inner walls of a beating heart, reached through the body's vasculature from a puncture in the skin. (Id.)



## IV.    THE ASSERTED PATENTS

### A.    Identification, Ownership, and Enforcement Rights of the Asserted Patents

4.1.    Three Asserted Patents are the subject of this investigation:  U.S. Patent Nos. 6,471,694, 6,572,610, and RE 40,049.

4.2.    The 694 Patent duly and legally issued to Cryogen, Inc. as assignee on October 29, 2002, based on an application filed on August 9, 2000.  The 694 Patent is entitled "Control System For CryoSurgery."

4.3.    Each of the named inventors assigned all right, title and interest in the 694 Patent to Cryogen.  A certified copy of the assignment documents, as duly filed with the U.S. Patent and Trademark Office, is attached in Ex. 15.

4.4.    The 610 Patent duly and legally issued to Cryogen, Inc. as assignee on June 3, 2003, based on an application filed on August 21, 2001, which was published on February 27,

2003 as US 2003/0040740. The 610 Patent is entitled "Cryogenic Catheter With Deflectable Tip."

4.5.    Each of the named inventors assigned all right, title and interest in the 610 Patent to Cryogen. A certified copy of the assignment documents, as duly filed with the U.S. Patent and Trademark Office, is attached in Ex 15.

4.6.    The RE 049 Patent duly and legally issued to AMS Research as assignee on February 12, 2008, based on Application Serial No. 11/412,250, filed on April 26, 2006. The RE 049 Patent is entitled "Precooled Cryogenic Ablation System." The RE 049 Patent is a divisional application of reissue Application No. 10/446,390, and a reissue of U.S. Patent No. 6,237,355 ("the 355 Patent").

4.7.    The named inventor assigned all right, title and interest in the 355 Patent and Application Serial No. 10/446,390 to Cryogen. A certified copy of the assignment documents, as duly filed with the U.S. Patent and Trademark Office, is attached as Exhibit 15.

4.8.    Cryogen assigned all right, title and interest in the Asserted Patents to American Medical Systems Gynecology, Inc. A certified copy of the assignment document, as duly filed with the U.S. Patent and Trademark Office, is attached as Exhibit 16.

4.9.    American Medical Systems Gynecology, Inc., in turn, assigned all right, title and interest in the Asserted Patents to AMS Research. A certified copy of the assignment document, as duly filed with the U.S. Patent and Trademark Office, is attached as Exhibit 8.

4.10.    On August 31, 2000, Cryogen granted an exclusive, worldwide license to certain patent rights, including the 694 Patent, 610 Patent, and the applications that led to the RE 049 Patent, to CryoCor in a certain field of use. (Confidential Exhibit 7.) Subsequent to an acquisition of Cryogen, AMS Research obtained all right, title and interest in the Asserted Patents. (Ex. 8, Assignments for the 694 Patent, 610 Patent and RE 049 Patent from American

Medical Systems Gynecology, Inc. to AMS Research Corporation.)  AMS Research stands as the licensor of the exclusive, worldwide field of use license to CryoCor.

4.11.    Pursuant to 19 C.F.R. §§ 210.12 (a)(9)(i), (ii) and 210.12(c), accompanying this Complaint are:

- a certified copy of each Asserted Patent at Ex. 1 (610 Patent); Ex. 2 (RE 049 Patent); and Ex. 3 (694 Patent);

- a copy and three additional copies of the prosecution history of each Asserted Patent, which is separately and concurrently submitted as Appendix C (694 Patent (uncertified copy)); Appendix E (610 Patent (certified)); Appendix G (RE 049 Patent (certified));

- four copies of each patent and technical reference document mentioned in each Asserted Patent's prosecution history, which is separately and concurrently filed as Appendix D (694 Patent); Appendix F (610 Patent); Appendix G (RE 049 Patent);

- three copies of the Confidential Exhibit 7, the 08/31/2000 License Agreement between CryoCor and Cryogen, which is separately and concurrently submitted as Appendix A; and

- three copies of the Exhibit 17, the 06/28/2007 Public, redacted Development and License Agreement among CryoCor, Boston Scientific Corporation and Boston Scientific Scimed, Inc., which is separately and concurrently submitted as Appendix B.

**B.    The 694 Patent**

4.12.    Non-Technical Description of the 694 Patent[1]

a.      The 694 Patent is directed to an apparatus and method for automatic operation of a refrigeration system for use in cryosurgery.  The refrigeration system provides refrigeration power to a catheter for tissue ablation or mapping. The claimed apparatus can monitor flow rates, pressures, and/or temperatures to achieve and maintain optimum system performance.  Further, these parameters can be used to more safely control the operation of the system.  The primary refrigeration system can be an open or

---

[1] This non-technical description does not construe the specification or any claim of the 694 Patent and is not intended to do so.

closed loop system and a secondary refrigeration system, which precools the primary refrigerant, is typically a closed loop. The system can control operation to a desired operational state, perform safety checks, and/or achieve safe shutdown. Such control is useful in the patient treatment setting.

b.     The 694 patent has 19 claims. Claims 1, 12 and 13 are independent claims, claims 2-11 depend directly or indirectly from claim 1, and claims 14-19 depend directly or indirectly from claim 13. At this time, at least claims 1, 2, 13 and 14 are believed to be infringed by the intended use of CryoCath's CryoCath Products, or components thereof, which are manufactured by CryoCath in Canada and then imported, offered for sale, sold, and used in the United States.

c.     Representative claim 13 is directed to a method for controlling a cryosurgical instrument, comprising: providing a refrigerant supply, a cryosurgery catheter including an expansion element, a temperature sensor, a pressure sensor, a flow sensor, a precool loop, and a control system connected to said sensors; flowing said refrigerant via a high pressure duct into said cryosurgery catheter; precooling said refrigerant in said precool loop; expanding said refrigerant in said catheter with said expansion element; sensing the temperature of said catheter with said temperature sensor; sensing the pressure of said expanded refrigerant with said pressure sensor; sensing the flow rate of said refrigerant with said flow sensor; and controlling said refrigerant with said control system, to maintain a selected catheter temperature, in response to signals from said temperature sensor, said pressure sensor, and said flow sensor.

11

**C.    The 610 Patent**

4.13.    Non-Technical Description of the 610 Patent[2]

a.    The 610 Patent is directed to a flexible cryosurgical catheter. The catheter allows the application of cold temperatures at locations within the human body via minimally invasive techniques. More specifically, the catheter is passable through the larger blood vessels and cavities of the heart. The catheter has a deflectable segment adjacent to its distal end (patient end) which can be deflected by remotely located means. For example, a pull wire in the catheter is connected to the deflectable segment. A deflection mechanism in the catheter handle allows for pulling on the pull wire to establish a desired curvature in the deflectable segment. The ability to establish a desired curvature can be beneficial in the treatment of cardiac arrhythmia to apply cryosurgical temperatures at selected locations in the patient's heart, to create localized areas of necrotic tissue. The flexible catheter can have a heat transfer element, among other features, at or near its distal end. The heat transfer element can be cooled to a cryosurgical temperature through pressure change of the refrigerant within the catheter. The cooled catheter is placed in contact with a selected tissue to treat the tissue. The target tissue is frozen, thereby destroying the abnormal tissue, with the healthy tissue around the treated tissue left uninjured.

b.    The 610 patent has 8 claims. Claims 1-5 are independent claims and claims 6-7 depend directly or indirectly from claim 5. At this time, at least claims 3, 5, 6 and 7 are believed to be infringed by CryoCath's CryoCath Products, or components thereof, that are manufactured by CryoCath in Canada and then imported, offered for sale, sold, and used in the United States.

_____

[2] This non-technical description does not construe the specification or any claim of the 610 Patent and is not intended to do so.

12

c.      Representative claim 5 is directed to a cryosurgical apparatus, comprising: a cryosurgical refrigeration unit; a control handle connected in fluid flow communication with said refrigeration unit; a torque transmitting flexible tubular catheter connected in fluid flow communication with said control handle, said control handle being adapted to impart axial torque to rotate said catheter; a deflectable tubular segment at a distal end of said catheter, said deflectable segment having a higher degree of flexibility than said catheter; a spine element within said deflectable segment, said spine element being constructed to define a preferred plane of deflection; a heat transfer element on a distal end of said deflectable segment; a refrigerant supply conduit within said catheter, said supply conduit being adapted to supply refrigerant from said refrigeration unit to said heat transfer element; a tip deflection mechanism in said control handle; a pull wire connecting said tip deflection mechanism to said heat transfer element, said tip deflection mechanism being adapted to impart tension to said pull wire to establish curvature of said deflectable segment of said catheter; and a sensor located near said distal end of said catheter.

**D.      The RE 049 Patent**

4.14.   Non-Technical Description of the RE 049 Patent[3]

a.      The RE 049 Patent is directed to a method and apparatus for the performance of cryosurgery, such as in cardiac ablation to correct arrhythmias. The RE 049 Patent teaches, among other things, precooling of a primary refrigerant to liquefy the primary refrigerant. The precooling can be accomplished with a secondary refrigeration cycle using a second refrigerant. This approach can maximize the available cooling power of the primary refrigerant, and achieve the lower treatment temperatures. The

---

[3] This non-technical description does not construe the specification or any claim of the RE 049 Patent and is not intended to do so.

13

appropriate use of a secondary evaporative refrigeration system allows the system to precool and liquefy the primary high pressure refrigerant, before passage of the primary refrigerant through a primary expansion element. This refrigeration approach enables the generation of a sufficiently low temperature, and can maximize the available cooling power at the cold tip of a cryosurgical probe or catheter. This ultimately leads to improved tissue destruction as a physician is able to selectively cool discrete portions of biological tissue to very low temperatures in the performance of cryosurgery, without substantially cooling adjacent tissues of the organ.

      b.     The RE 049 Patent has 3 claims. Claims 1 and 2 are independent claims, and claim 3 depends from claim 2. At this time, at least claims 2 and 3 are believed to be infringed by the CryoCath Products, or components thereof, that are manufactured by CryoCath in Canada and then imported, offered for sale, sold, and used in the United States.

      c.     Representative claim 2 is directed to a cryosurgical instrument for ablation of cardiac tissue, comprising: a source of a gaseous primary refrigerant, wherein said primary refrigerant is a single gas and has a critical temperature; a source of a liquid secondary refrigerant, said secondary refrigerant having a critical temperature higher than said critical temperature of said primary refrigerant; a secondary expansion element connected to receive said liquid second refrigerant, said secondary expansion element being constructed to vaporize and expand said secondary refrigerant to a temperature below said critical temperature of said primary refrigerant; a primary-to-secondary heat exchanger having a primary refrigerant flow path connected to receive said gaseous primary refrigerant, and a secondary refrigerant flow path connected to receive said vaporized and expanded secondary refrigerant from said secondary expansion element,

14

said heat exchanger being constructed to cool and liquefy said primary refrigerant; a

primary expansion element connected to receive said liquid primary refrigerant from said

heat exchanger, said primary expansion element being constructed to vaporize and

expand said primary refrigerant to a selected cryogenic temperature; and a cryoablation

heat transfer element connected to receive said vaporized and expanded primary

refrigerant.

**E.      Foreign Counterparts of the Respective Asserted Patents**

4.15.   The following is a list of current foreign patents and foreign applications that are

presently understood to correspond to the Asserted Patents:

- 694 Patent: Australia (AU2001282918B2); Canada (CA 2418893C); Canada
  2516656); Canada (CA 2517747C); European Patent (EP1307155); WIPO (PCT
  WO 2002011638);

- 610 Patent: Australia (AU 2002323328B2); Canada (CA 2457150A1); European
  Patent (EP 1418857A4); Japan (JP 2004538083); WIPO (PCT WO 2003015651);
  and

- RE 40,049 (reissue of the 355 Patent): Austria (AT 297535); Australia (AU
  754357B); Canada (CA 2378054C); Germany (DE60020705T2); European Patent
  (EP 1192396B1); Spain (ES 2242623T3); Japan (JP20035033123T); and WIPO
  (PCT WO 2001001049).

4.16.   Attached as Exhibits 18, 19 and 20 are charts listing each foreign patent and

patent application that are presently understood to correspond to each Asserted Patent, and the

status thereof.  On information and belief, no other foreign patents correspond to the Asserted

Patents and no other foreign patent applications corresponding to the Asserted Patents are

pending, rejected, or abandoned.

**V.      UNFAIR ACTS – CRYOCATH IS INFRINGING THE ASSERTED PATENTS**

5.1.    On information and belief, Respondent CryoCath has been and still is infringing,

contributing to infringement, and/or inducing infringement of each of the Asserted Patents in the

United States.  CryoCath's infringing activities in the United States include at least using,

offering to sell, selling, importing and/or having imported one or more of its CryoCath Products. CryoCath has violated, and continues to violate, U.S. patent laws. CryoCath is not licensed under the Asserted Patents.

5.2.    On information and belief, CryoCath manufactures its CryoCath Products in Canada and imports, or sells for importation, its CryoCath Products into the United States. The CryoCath Products and their intended use include all the elements of at least claims 1, 2, 13 and 14 of the 694 patent, claims 3, 5, 6 and 7 of the 610 Patent, and claims 2 and 3 of the RE 049 Patent. As a result, at least these claims of the Asserted Patents are infringed in violation of Section 337(a)(1)(B)(i).

5.3.    On information and belief, CryoCath has received clearance from the United States Food and Drug Administration (the "FDA") to market its CryoCath Products in the United States. (Ex. 21, 12/06/2007 Webpage printout from the U.S. Food and Drug Administration Website for 7F Freezor Cardiac Cryoablation Catheter and CCT.2 CryoConsole System – P-20045 at http://www.fda.gov/cdrh/PDF2/P020045.html.)

5.4.    CryoCath states in one of its most recent quarterly reports: "Today, the majority of our revenue is <u>derived in the United States</u>, with a significant portion coming from recurring, single-use product sales." (Ex. 9, CryoCath Technologies, Inc.'s Third Quarter 2007 Report, at 5 (emphasis added).) Attached to this Complaint as Exhibit 22 is a copy of a CryoCath web page accessible via the Internet in the United States identifying CryoCath Products for the U.S. market. (Ex. 22, Webpage, "Ordering Information [in the USA].")

5.5.    On information and belief, CryoCath provides training in the use of its CryoCath Products for customers and potential customers in the United States. By using the CryoCath Products as instructed, CryoCath's customers and potential customers in the United States practice or will practice a method that infringes at least claims 13 and 14 of the 694 Patent.

5.6.    Among other things, CryoCath maintains an instructional video clip on its website showing a cryoablation procedure with its CryoCath Products. (Ex. 23, 01/31/2008 Website printout of "Akron Children's Hospital Replay of Pediatric Cardiac Cryoablation" procedure at http://www.or-live.com/akronchildrens/1562/ [CryoCath's website provides links to this Akron website].) On information and belief, CryoCath also created an in-service video for its CryoCath Products at the Cleveland Clinic, 9500 Euclid Avenue, Cleveland, OH 44106 USA. This video is maintained by the Heart Rhythm Society Website. (Ex. 24, 01/31/2008 Website printout of "Virtual Hands-On: CryoCath Technologies Cryoablation" at http://www.hrsonline.org/Education/SelfStudy/VHO/cryocath_technologies_cryoablation.cfm.)

5.7.    The CryoCath website also identifies at least six physicians in the United States who are available as medical advisors for the CryoCath Products "in the U.S.A." These physicians are located at various cites throughout the United States, namely Des Moines, Iowa; Colorado Springs, Colorado; Richmond, Virginia; Hyannis, Massachusetts; Tampa, Florida; and Green Bay, Wisconsin. An email address for each physician is also provided through CryoCath's website. (Ex. 41, 02/27/08 Webpage printout of Cryocath Technologies Inc.'s website of how to "Contact a Medical Advisor" at http://www.cryocath.com/en/2.patients/2.8medical.advisor.asp.)

5.8.    As set forth herein, CryoCath's CryoCath Products and their intended uses include all of the elements of at least claims 1, 2, 13, and 14 of the 694 patent, claims 3, 5, 6 and 7 of the 610 Patent, and claims 2 and 3 of the RE 049 Patent. Pursuant to 19 C.F.R. § 210.12(a)(9)(vii), claim charts applying each of these exemplary claims to CryoCath's CryoCath Products and methods are attached as Exhibit 25 (694 Patent), Exhibit 26 (610 Patent) and Exhibit 27 (RE 049 Patent). In the event that any of the remaining, unasserted claims are

17

infringed by CryoCath, a motion will be timely made to add these claims to the scope of the investigation.

5.9.    CryoCath's technical, instructional, and promotional literature describes the use of its CryoCath Products and components thereof by a method that would infringe at least claims 13 and 14 of the 694 Patent.  Exhibits 21, 28, and 29 are copies of the FDA Documents for the CryoCath CryoCath Products, CryoCath Operator's Manual, and Notes for Videos located in the Electrophysiological Knowledge Center.  The technical, instructional, and promotional literature constitute evidence of active steps taken by CryoCath to induce and enable its customers to practice at least claims 13 and 14 of the 694 Patent.

5.10.   CryoCath's CryoCath Products are not staple articles of commerce.  CryoCath specifically designed and markets its CryoCath Products for treating cardiac conditions with cryoablation.  The CryoCath Products have no substantial non-infringing uses.

## VI.    IMPORTATION AND SALE

6.1.    On information and belief, CryoCath manufactures its CryoCath Products in Canada and imports the products into the United States, or imports components of the CryoCath Products into the United States and assembles or has others assemble the CryoCath Products in the United States.  (See Ex. 9, CryoCath Technologies, Inc.'s Third Quarter 2007 Report, at 46.) For example, CryoCath's product labeling for its CryoCath Xtra catheter, obtained in the United States, indicates that it is "Made in Canada."  (Ex. 30, Confidential Declaration of Gregory J. Tibbitts, at ¶ 15.)



6.2.     Accompanying this Complaint as Confidential Exhibit 30 is the confidential

declaration of Mr. Gregory Tibbitts, CryoCor's Chief Financial Officer, who observed that the

CryoCath CryoCath Products and components thereof were displayed and offered for sale at the

Boston Atrial Fibrillation Symposium on January 17-19, 2008.  (Ex. 30, Confidential Declaration

of Gregory J. Tibbitts, at ¶ 14.)

6.3.     Attached to this Complaint are CryoCath's PMA and Form 510(k) Summaries as

filed with the FDA (Exhibit 31), which indicate that CryoCath is located in Canada,

manufactures its products there, and intends that its products be used in the United States.

6.4.     CryoCath states: "our direct sales force, comprised of both sales representative

and clinical specialists, have made great strides in penetrating our key markets.  To date, these

focal catheters [Freezor, Freezor Xtra and Freezor MAX] have been installed in over 325 centers

in both Europe and the United States."  (Ex. 32, CryoCath Technologies, Inc.'s 2007 Progress

Report at 13 (emphasis added).)  CryoCath illustrates its activity in the United States at page 14

of its 2007 Annual Report.



     6.5.    CryoCath "operates in only one segment which is the sector related to the

development, manufacture and sale of therapeutic cryoablation technologies and products."  (Id.)

CryoCath identifies the United States as a "destination" of its products and the location of

consoles at customers' premises.  (Ex. 9, CryoCath Technologies, Inc.'s Third Quarter 2007

Report at 46.)

**11. Segment Disclosure**

The Company carries on substantially all of its operations in Canada including manufacturing and shipping all of its products. All of its property, plant and equipment are located in Canada except for consoles located at customers' premises. It operates in only one segment which is the sector related to the development, manufacture and sale of therapeutic cryoablation technologies and products.

The following table presents sales by the destination of its products and the location of consoles at customers' premises.

|  | Three months ended | | Nine months ended | |
|  | June 30, 2007 $ | June 30, 2006 $ | June 30, 2007 $ | June 30, 2006 $ |
| --- | --- | --- | --- | --- |
| United States | 7,383,845 | 6,617,416 | 22,278,574 | 20,477,626 |
| Europe | 3,722,461 | 2,574,255 | 9,635,792 | 7,243,100 |
| Canada | 261,401 | 188,532 | 438,178 | 371,200 |
| Other | 332,505 | 327,381 | 767,766 | 817,353 |
|  | 11,700,212 | 9,707,584 | 33,120,310 | 28,909,279 |

6.6.    On information and belief, the accused CryoCath Products may be classified under at least the following Harmonized Tariff Schedule of the United States ("HTS") item numbers: 9018.39.00 and 9032.89.60. These HTS numbers are intended for illustration only and are not intended to be restrictive in scope of the products accused in this investigation.

## VII.    LICENSES

7.1.    On about August 31, 2000, Cryogen granted an exclusive, worldwide license to the 694 Patent, the 610 Patent, and the applications that led to the RE 049 Patent to CryoCor in certain fields of use. On about December 30, 2002, AMS Holdings acquired Cryogen by merger. (Ex. 6, American Medical Systems Holdings, Inc.'s Third Quarter 2003 10-Q.) AMS Research now has all right, title and interest in certain patents and applications, including the Asserted Patents at issue in this investigation. AMS Research stands as the licensor of the exclusive, worldwide field of use license to CryoCor.

7.2.    On June 28, 2007, CryoCor entered into a Development and License Agreement with Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively "Boston") that provided Boston with, among other things, a sublicense to patents licensed (with a right to sublicense) by CryoCor, which include at least the RE 049 Patent. (Ex. 17, 06/28/2007 License Agreement.)

7.3.    Pursuant to 19 C.F.R. § 210.12(c), copies of all license agreements accompany this Complaint as Exhibits 7 and 17.

7.4.    Except for the licenses described above, neither CryoCor nor any of its licensors or predecessors has licensed the 694 Patent, the 610 Patent, or the RE 049 Patent to anyone within the field of use granted to CryoCor.

## VIII.  DOMESTIC INDUSTRY

8.1.     As required by 19 U.S.C. § 1337(a)(2), a domestic industry, as defined by 19

U.S.C. § 1337(a)(3), exists in the United States with respect to the Asserted Patents.  CryoCor

manufactures cryosurgical systems that practice at least one claim of each Asserted Patent, for

which there has been a significant investment in plant and equipment, significant employment of

labor or capital, and/or substantial investment in the exploitation of the Asserted Patents.

8.2.     Claim charts illustrating that exemplary claim 13 of the 694 Patent, claim 5 of the

610 Patent, and claim 2 of the RE 049 Patent read on the CryoCor products, or method of using

those products, accompany this Complaint as Exhibits 33, 34, and 35, respectively.  Other

products manufactured and sold by Complainants in the United States may also be covered by

the Asserted Patents.

8.3.     There is and has been significant investment in inventory materials and equipment

in the United States with respect to the Asserted Patents.  (Ex. 30, Confidential Declaration of

Gregory J. Tibbitts, at ¶¶ 9-10.)  Attached to this Complaint as Confidential Exhibit 30 is

information about such investment in the inventory materials and equipment.

8.4.     There is and has been significant employment of labor or capital in the United

States with respect to the Asserted Patents.  (Id. at ¶¶ 8, 11-15.)  Accompanying this Complaint

as Confidential Exhibit 30 is information about employment of labor and capital in connection

with CryoCor's products that are within the scope of the Asserted Patents.

8.5.     CryoCor has about 56 employees involved with the patented subject matter,

which includes five engineering and technical employees working in research and development

activities for our cryoablation console, five engineering and technical employees working in

research and development activities for our cryoablation catheter, four non-technical employees

working in manufacturing of our cryoablation console, and five non-technical employees

working in manufacturing of our cryoablation catheters. (Id. at ¶ 8.)

8.6.    There is and has been substantial investment in the exploitation with respect to the

Asserted Patents. (Id. at ¶¶ 11-13.)  Accompanying this Complaint as Confidential Exhibit 30 is

detailed information about the substantial investment in exploitation in connection with

CryoCor's products that are within the scope of the Asserted Patents.

8.7.    CryoCor licensed the Asserted Patents from Cryogen for substantial

consideration. (Ex. 7, Confidential 08/31/2000 License Agreement.)  AMS paid $36.2 million

plus $4.7 million of acquisition-related costs to acquire Cryogen and gain access to Cryogen's

products and technology. (Ex. 6, American Medical Systems Holdings, Inc.'s Third Quarter

2003 10-Q.)  In addition to the initial consideration, AMS Holdings also agreed to make an

additional payment of up to $110 million, depending on product sales. (Id.)

8.8.    Additionally, CryoCor has incurred significant expenses to obtain market

approval from the United States Food and Drug Administration. (Ex. 30, Confidential

Declaration of Gregory J. Tibbitts, at ¶ 13.)  In August 2007, CryoCor received approval for the

treatment of AFL with the CryoCor Cardiac Cryoablation System. (Ex. 36, 08/01/2007 U.S.

Department of Health and Human Services letter to CryoCor, Inc., P050024 - CryoCor

Cryoablation System.)

8.9.    CryoCor is and has been incurring expenses in connection with the marketing and

selling of CryoCor's products covered by the Asserted Patents in the United States, where

CryoCor has received FDA approval. (Ex. 4, CryoCor, Inc.'s Third Quarter 2007 10-Q.)

CryoCor is in the process of building its sales and marketing capabilities, and has recently hired

a Vice President of Sales and Marketing, who will be leading these efforts. (Id.)

## IX.    RELATED LITIGATION

9.1.    CryoCor, AMS Research Corporation and CryoCath are parties to a patent infringement action, *CryoCor, Inc., et al. v. CryoCath Technologies, Inc.*, Civil Action, No. 08-0031-GMS, in the United States District Court for the District of Delaware.  This case was filed on January 16, 2008, and presently involves the 610 Patent and the 694 Patent.  The parties have stipulated to add the RE 049 Patent.  The 02/27/2008 status of the case is summarized in the Docket Report available on the District Court's Electronic Case Filing (ECF) System, attached as Exhibit 37.

9.2.    CryoCath and CryoCor are parties to a separately captioned patent infringement action, *CryoCath Technologies, Inc. v. CryoCor, Inc.*, Civil Action No. 07-631-GMS, in the United States District Court for the District of Delaware.  This case was filed on October 17, 2007, and involves patents owned by CryoCath.  The 02/27/2008 status of the case is summarized in the Docket Report available on the District Court's Electronic Case Filing (ECF) System, attached as Exhibit 38.

9.3.    In Canada, CryoCor, AMS Research Corporation and CryoCath are parties to a patent infringement action, *CryoCor, Inc., et al. v. CryoCath Technologies, Inc.*, Civil Action, No. T-66-08, in Federal Court.  This case was filed on January 15, 2008, by CryoCor and AMS Research Corp. and presently involves Canadian Patent Nos. 2,378,054, 2,516,656, and 2,517,747, one or more of which is related to the Asserted Patents.  Pursuant to an agreement between the parties, the Defendant on February 22, 2008 served the Plaintiffs with a demand for particulars.  The Plaintiffs are to provide a response by no later than March 7, 2008, following which the Defendant is to file its Defence, or any motion for particulars or other relief with respect to the Statement of Claim, by no later than March 21, 2008.

9.4.    On information and belief, other than the litigation described above, there has been no foreign or domestic court or agency litigation involving the 694 Patent, the 610 Patent, or the RE 049 Patent.

## X.    REQUESTED RELIEF

By reason of the foregoing, Complainants request that the Commission:

10.1.    Institute an immediate investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, into the unlawful importation into the United States, the sale for importation into the United States, and/or the use, sale or offer for sale within the United States after importation of certain CryoCath catheters, consoles, and other apparatus for cryosurgery and components thereof, that directly infringe or induce or contribute to the infringement of one or more claims of the Asserted Patents;

10.2.    Determine that there has been a violation of Section 337 of the Tariff Act of 1930;

10.3.    Issue a permanent exclusion order pursuant to Section 337(d) of the Tariff Act of 1930, as amended, excluding the entry into the United States of all of CryoCath's CryoCath Products and components thereof that directly infringe or induce or contribute to the infringement of one or more claims of the Asserted Patents and that are manufactured, imported, or sold by or on behalf of CryoCath, its affiliates, subsidiaries, successors, or assigns;

10.4.    Issue a permanent cease and desist order pursuant to Section 337(j) of the Tariff Act of 1930, as amended, prohibiting CryoCath, its affiliates, subsidiaries, successors, and assigns from marketing, demonstrating, distributing, offering for sale, selling, supporting, or transferring (including the movement or shipment of inventory in the United States) any of CryoCath's CryoCath Products and components thereof that directly infringe or induce or contribute to the infringement of one or more claims of the Asserted Patents; and

25

10.5.   Issue such additional and further relief as the Commission deems just and proper, based on the facts determined by the investigation and within the Commission's authority.

Respectfully submitted,

Date:  February 27, 2008

*Leland G. Hansen*

Leland G. Hansen
Wil Rao
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
(312) 775-8000
(312) 775-8100 - facsimile
*Email:  lhansen@mcandrews-ip.com*
*Email:  wrao@mcandrews-ip.com*

**Attorneys for AMS Research Corp.**

Kevin O'Brien
Kevin Sullivan
BAKER & MCKENZIE LLP
815 Connecticut Avenue, NW
Washington, DC 20006-4078
(202) 452-7000
(202) 452-7074 - facsimile
*Email: kevin.m.o'brien@bakernet.com*

Howard N. Wisnia
James P. Conley
BAKER & MCKENZIE LLP
12544 High Bluff Drive, Third Floor
San Diego, California 92130-3051
(858) 523-6200
(858) 259-8290 - facsimile
*Email: howard.n.wisnia@bakernet.com*

**Attorneys for CryoCor, Inc.**

26

## VERIFICATION BY CRYOCOR, INC.

In accordance with 19 C.F.R. §§ 210.4 and 210.12(a), I, Gregory J. Tibbitts, declare under penalty of perjury that the following statements are true:

1.    I am Chief Financial Officer of CryoCor, Inc., and am authorized to sign this Complaint on behalf of CryoCor;

2.    I have read the foregoing Complaint;

3.    To the best of my knowledge, information, and belief, based upon reasonable inquiry, the foregoing Complaint is well-founded in fact and warranted by existing law, by a non-frivolous argument for the extension, modification, or reversal of existing law, or by the establishment of new law;

4.    The allegations and other factual contentions have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

5.    The foregoing Complaint is not being filed for any improper purpose such as to harass or cause unnecessary delay or needless increase in the cost of litigation.

Executed on this 28 day of February, 2008.

_____

## VERIFICATION BY AMS RESEARCH CORP.

In accordance with 19 C.F.R. §§ 210.4 and 210.12(a), I, José W. Jimenez, declare under penalty of perjury that the following statements are true:

1.    I am Chief Intellectual Property Officer of AMS Research Corp. ("AMS Research"), and am authorized to sign this Complaint on behalf of AMS Research;

2.    I have read the foregoing Complaint;

3.    To the best of my knowledge, information, and belief, based upon reasonable inquiry, the foregoing Complaint as it pertains to AMS Research is well-founded in fact and warranted by existing law, by a non-frivolous argument for the extension, modification, or reversal of existing law, or by the establishment of new law;

4.    The allegations and other factual contentions as it pertains to AMS Research have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

5.    The foregoing Complaint is not being filed for any improper purpose such as to harass or cause unnecessary delay or needless increase in the cost of litigation.


Executed on this **27** day of February, 2008.

José W. Jimenez, Esq.
Chief Intellectual Property Officer
AMS Research Corporation

# EXHIBIT B

the Office of Management and Budget (OMB) for review; comment request.

**SUMMARY:** In accordance with the provisions of the Paperwork Reduction Act of 1995 (Pub. L. 104–13), the Commission has submitted a proposal for the collection of information to OMB for approval. The proposed information collection is a 3-year extension of the current "generic clearance" (approved by the Office of Management and Budget under Control No. 3117–0016) under which the Commission can issue information collections (specifically, producer, importer, purchaser, and foreign producer questionnaires and certain institution notices) for the following types of import injury investigations: Antidumping, countervailing duty, escape clause, market disruption, NAFTA safeguard, and "interference with programs of the USDA." Any comments submitted to OMB on the proposed information collection should be specific, indicating which part of the questionnaires or study plan are objectionable, describing the issue in detail, and including specific revisions or language changes.

**DATES:** To be assured of consideration, comments should be submitted to OMB within 30 days of the date this notice appears in the **Federal Register**.

**ADDRESSES:** Comments about the proposal should be directed to the Office of Information and Regulatory Affairs, Office of Management and Budget, New Executive Office Building, Washington, DC 20503, Attention: David Rostker, Desk Officer for U.S.

International Trade Commission. Copies of any comments should be provided to Stephen McLaughlin (United States International Trade Commission, 500 E Street, SW., Washington, DC 20436).

**FOR FURTHER INFORMATION CONTACT:** Copies of the proposed collection of information and supporting documentation may be obtained from John Ascienzo (USITC, tel. no. 202–205–3175). Hearing-impaired persons can obtain information on this matter by contacting the Commission's TDD terminal on 202–205–1810. Persons with mobility impairments who will need special assistance in gaining access to the Commission should contact the Office of the Secretary at 202–205–2000. General information concerning the Commission may also be obtained by accessing its Internet server (*http://www.usitc.gov*).

**SUPPLEMENTARY INFORMATION:**

(1) The proposed information collection consists of five forms, namely the *Sample Producers', Sample Importers', Sample Purchasers', and Sample Foreign Producers' questionnaires* (separate forms are provided for questionnaires issued for the five-year reviews) and *Sample Notice of Institution for Five-Year Reviews.*

(2) The types of items contained within the sample questionnaires and institution notices are largely determined by statute. Actual questions formulated for use in a specific investigation depend upon such factors as the nature of the industry, the relevant issues, the ability of respondents to supply the

data, and the availability of data from secondary sources.

(3) The information collected through questionnaires issued under the generic clearance for import injury investigations are consolidated by Commission staff and form much of the statistical base for the Commission's determinations. Affirmative Commission determinations in antidumping and countervailing duty investigations result in the imposition of additional duties on imports entering the United States. If the Commission makes an affirmative determination in a five-year review, the existing antidumping or countervailing duty order will remain in place. The data developed in escape-clause, market disruption, and interference-with-USDA-program investigations (if the Commission finds affirmatively) are used by the President/U.S. Trade Representative to determine the type of relief, if any, to be provided to domestic industries.

The submissions made to the Commission in response to the notices of institution of five-year reviews form the basis for the Commission's determination as to whether a full or expedited review should be conducted.

(4) Likely respondents consist of businesses (including foreign businesses) or farms that produce, import, or purchase products under investigation. Estimated total annual reporting burden for the period July 2008–June 2011 that will result from the collection of information is presented below.

TABLE 1.—PROJECTED ANNUAL BURDEN DATA, BY TYPE OF INFORMATION COLLECTION, JULY 2008–JUNE 2011

| Item | Producer questionnaires | Importer questionnaires | Purchaser questionnaires | Foreign producer questionnaires | Institution notices for 5-year reviews | |
|---|---|---|---|---|---|---|
| Number of respondents .............. | 791 | 1,345 | 1,041 | 1,180 | 86 | 4,443 |
| Frequency of response ................ | 1 | 1 | 1 | 1 | 1 | 1 |
| Total annual responses .............. | 791 | 1,345 | 1,041 | 1,180 | 86 | 4,443 |
| Hours per response ..................... | 67.1 | 41.4 | 30.2 | 48.0 | 14.9 | 44.6 |
| Total hours ............................ | 53,111 | 55,710 | 31,412 | 56,693 | 1,279 | 198,205 |

No recordkeeping burden is known to result from the proposed collection of information.

By order of the Commission.

Issued: March 28, 2008.

**Marilyn R. Abbott,**

*Secretary to the Commission.*

[FR Doc. E8–6806 Filed 4–1–08; 8:45 am]

**BILLING CODE 7020–02–P**

**INTERNATIONAL TRADE COMMISSION**

[Inv. No. 337–TA–642]

**In the Matter of Certain Catheter, Consoles and Other Apparatus for Cryosurgery, and Components Thereof; Notice of Investigation**

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Institution of investigation pursuant to 19 U.S.C. 1337.

**SUMMARY:** Notice is hereby given that a complaint was filed with the U.S. International Trade Commission on February 28, 2008, under section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. 1337, on behalf of CryoCor, Inc. of San Diego, California and AMS Research Corporation of Minnetonka, Minnesota. A supplement to the

complaint was filed on March 21. The complaint alleges violations of section 337 based upon the importation into the United States, the sale for importation, and the sale within the United States after importation of certain catheter, consoles and other apparatus for cryosurgery, and components thereof that infringe certain claims of U.S. Patent No. 6,471,694, U.S. Patent No. 6,572,610, and U.S. Patent No. RE 40,049. The complaint further alleges that an industry in the United States exists as required by subsection (a)(2) of section 337.

The complainants request that the Commission institute an investigation and, after the investigation, issue an exclusion order and a cease and desist order.

**ADDRESSES:** The complaint, as supplemented, except for any confidential information contained therein, is available for inspection during official business hours (8:45 a.m. to 5:15 p.m.) in the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW., Room 112, Washington, DC 20436, telephone 202–205–2000. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal on 202–205–1810. Persons with mobility impairments who will need special assistance in gaining access to the Commission should contact the Office of the Secretary at 202–205–2000. General information concerning the Commission may also be obtained by accessing its Internet server at *http://www.usitc.gov.* The public record for this investigation may be viewed on the Commission's electronic docket (EDIS) at *http://edis.usitc.gov.*

**FOR FURTHER INFORMATION CONTACT:** Mareesa A. Frederick, Esq., Office of Unfair Import Investigations, U.S. International Trade Commission, telephone (202) 205–2055.

**Authority:** The authority for institution of this investigation is contained in section 337 of the Tariff Act of 1930, as amended, and in section 210.10 of the Commission's Rules of Practice and Procedure, 19 CFR 210.10 (2007).

*Scope of Investigation:* Having considered the complaint, the U.S. International Trade Commission, on March 25, 2008, ordered that—

(1) Pursuant to subsection (b) of section 337 of the Tariff Act of 1930, as amended, an investigation be instituted to determine whether there is a violation of subsection (a)(1)(B) of section 337 in the importation into the United States, the sale for importation, or the sale within the United States after

importation of certain catheter, consoles, and other apparatus for cryosurgery and components thereof that infringe one or more of claims 1, 2, 13, and 14 of U.S. Patent No. 6,471,694; claims 3 and 5–7 of U.S. Patent No. 6,572,610; or claims 2 and 3 of U.S. Patent RE 40,049, and whether an industry in the United States exists as required by subsection (a)(2) of section 337;

(2) Pursuant to Commission Rule 210.50(b)(1), 19 CFR § 210.50(b)(1), the presiding administrative law judge shall take evidence or other information and hear arguments from the parties and other interested persons with respect to the public interest in this investigation, as appropriate, and provide the Commission with findings of fact on this issue;

(3) For the purpose of the investigation so instituted, the following are hereby named as parties upon which this notice of investigation shall be served:

(a) The complainants are—CryoCor, Inc., 9717 Pacific Heights Boulevard, San Diego, California 92121; AMS Research Corporation, 10700 Bren Road West, Minnetonka, Minnesota 55343.

(b) The respondent is the following entity alleged to be in violation of section 337, and is the party upon which the complaint is to be served: CryoCath Technologies, Inc., 16771 Chemin Ste-Marie, Kirkland, Quebec, H9H 5H3, Canada.

(c) The Commission investigative attorney, party to this investigation, is Mareesa A. Frederick, Esq., Office of Unfair Import Investigations, U.S. International Trade Commission, 500 E Street, SW., Room 401E, Washington, DC 20436; and

(4) For the investigation so instituted, the Honorable Charles E. Bullock is designated as the presiding administrative law judge.

Responses to the complaint and the notice of investigation must be submitted by the named respondent in accordance with section 210.13 of the Commission's Rules of Practice and Procedure, 19 CFR 210.13. Pursuant to 19 CFR 201.16(d) and 210.13(a), such responses will be considered by the Commission if received not later than 20 days after the date of service by the Commission of the complaint and the notice of investigation. Extensions of time for submitting responses to the complaint and the notice of investigation will not be granted unless good cause therefor is shown.

Failure of the respondent to file a timely response to each allegation in the complaint and in this notice may be deemed to constitute a waiver of the

right to appear and contest the allegations of the complaint and this notice, and to authorize the administrative law judge and the Commission, without further notice to the respondent, to find the facts to be as alleged in the complaint and this notice and to enter an initial determination and a final determination containing such findings, and may result in the issuance of an exclusion order or a cease and desist order or both directed against the respondent.

By order of the Commission.

Issued: March 27, 2008.

**Marilyn R. Abbott,**

*Secretary to the Commission.*

[FR Doc. E8–6700 Filed 3–31–08; 8:45 am]

**BILLING CODE 7020–02–P**

---

## INTERNATIONAL TRADE COMMISSION

[Investigation No. 337–TA–512]

## In the Matter of Certain Light-Emitting Diodes and Products Containing Same; Notice of Issuance on Remand of a Limited Exclusion Order With Respect to Certain Patents

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Notice.

**SUMMARY:** Notice is hereby given that the U.S. International Trade Commission has, on remand from the United States Court of Appeals for the Federal Circuit, determined to issue a limited exclusion order with respect to five patents in the above-referenced investigation.

**FOR FURTHER INFORMATION CONTACT:** Michelle Walters, Office of the General Counsel, U.S. International Trade Commission, 500 E Street, SW., Washington, DC 20436, telephone (202) 708–5468. Copies of non-confidential documents filed in connection with this investigation are or will be available for inspection during official business hours (8:45 a.m. to 5:15 p.m.) in the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW., Washington, DC 20436, telephone (202) 205–2000. General information concerning the Commission may also be obtained by accessing its Internet server at *http://www.usitc.gov.* The public record for this investigation may be viewed on the Commission's electronic docket (EDIS) at *http://edis.usitc.gov.* Hearing-impaired persons are advised that information on this matter can be obtained by contacting the Commission's TDD terminal on (202) 205–1810.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CRYOCOR, INC. and AMS  RESEARCH CORPORATION, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CRYOCATH TECHNOLOGIES, INC. | ) ) | |
| Defendant. | ) ) ) | Civil Action No. 08-031-GMS |
| CRYOCATH TECHNOLOGIES INC., | ) ) ) | |
| Counterclaimant, | ) ) | |
| v. | ) ) | |
| CRYOCOR, INC. and AMS RESEARCH CORPORATION, | ) ) ) | |
| Counterdefendants. | ) ) | |

**ORDER GRANTING MOTION TO STAY CASE
UNDER 28 U.S.C. § 1659**

On motion of CryoCath Technologies Inc. and for good cause shown, defendant-counterclaimant's Motion to Stay Case under 28 U.S.C. § 1659 is hereby GRANTED.

All action in this case is stayed until the proceeding before the United States International Trade Commission has been resolved or until further Order of this Court.

SO ORDERD this _____ day of May, 2008.

_____
Honorable Gregory M. Sleet

{00214034;v1}